**Alan I. SILBERBERG**

v.

**Colonel Albert W. WILLIS, Stanley R. Resor, Secretary of the Army, and Melvin R. Laird, Secretary of Defense.**

**Misc. Civ. No. 69–77–W.**

United States District Court
D. Massachusetts.

Dec. 2, 1969.

John G. S. Flym, Flym, Zalkind & Silverglate, and Harvey A. Silverglate, Boston, Mass., for plaintiff.

Herbert F. Travers, U. S. Atty., Stanislaw R. J. Suchecki, Asst. U. S. Atty., for defendant.

## OPINION

WYZANSKI, Chief Judge.

Petitioner, an enlisted private in the United States Army Reserve, seeks to be discharged from the alleged custody of Col. Willis, who was his reserve unit commander, and from the alleged custody of the Secretaries of Defense and the Army. His claim is that he is entitled to discharge from the Armed Forces as a con-

scientious objector who has met the standards prescribed by Army Regulation 135–25, dated April 11, 1969. (Pl. Ex. 4). That regulation, so far as material, provides:

"1. *Purpose.* This regulation prescribes policies, criteria, and procedures governing the disposition of Reserve members of the Army who claim to be conscientious objectors.

2. *Applicability.* a. This regulation applies to all Reserve members of the Army, except those specified in b below.

b. The provisions of AR 600–200, AR 614–106, and AR 635–20 govern the disposition of Reserve members of the Army who claim to be conscientious objectors and who are either—

(1) Serving in the active military service in their Reserve status; or

(2) Serving on initial active duty for training in their status as Reserves of the Army.

3. *Explanation of terms.* For the purpose of this regulation, the following terms will apply:

\* \* \* \* \* \*

b. *Conscientious objector.* An individual who, by reason of religious training and belief, has been found to be—

(1) Conscientiously opposed to participation in war in any form and conscientiously opposed to participation in both combatant and noncombatant training and service in the Armed Forces (1–0 classification); or

(2) Conscientiously opposed to combatant training and service in the Armed Forces (1–A–0 classification.) \* \* \*

4. *Policy.* a. No vested right exists for an individual to be discharged at his own request by reason of conscientious objection prior to the expiration of his contractual or statutory obligation.

b. All requests for discharge based upon conscientious objections will be handled on an individual basis with final determination made at Headquarters, Department of the Army, in accordance with the criteria and procedures outlined in this regulation. The type of dis-

charge, if separation is warranted, will be determined by the member's military record and the standards and procedures outlined in this regulation. For the purpose of this regulation, ACDUTRA, AN-ACDUTRA, or AFT will not be considered as active duty.

5. *Eligibility for consideration.* a. Consideration will be given to requests for discharge by reason of conscientious objection to participation in war, in any form, when such objection develops subsequent to the member's entry into military service, whether such entry was by induction, enlistment, or appointment in any component of the Army.

b. Federal courts have held that a claim to exemption from military service under Selective Service laws must be interposed prior to notice of induction, and failure to make timely claim for exemption constitutes waiver of the right to claim. However, claims based on conscientious objection growing out of experiences prior to entering military service, but which did not become fixed until entry into the service, will be considered.

c. Consideration will not be given to requests for discharge based solely on conscientious objection which—

(1) Existed but was not claimed prior to member's initial entry into military service either by induction or enlistment or apointment in any component of the Army; or

(2) Existed but was claimed and denied by Selective Service prior to member's induction into the active military service; or

(3) Is based upon essentially political, sociological, or philosophical views or a merely personal moral code; or

(4) Claims objection to a particular war.

6. *Applications for discharge.* Reserve personnel requesting discharge by reason of conscientious objection will submit such requests in accordance with the following instructions:

a. Applications for discharge by reason of conscientious objection may be submitted on DA Form 2496 (Disposition Form) or by letter. The individual requesting discharge will include in the application, or as an inclosure thereto, the information indicated below as the minimum required for consideration of his request. The individual may submit such other information as desired.

(1) *General information.*

(a) Full name.

(b) Military service number.

\* \* \*

(2) *Religious training and belief.*

(a) A description of the nature of belief which is the basis of claim.

(b) Explain how, when, and from whom or from what source the applicant received the training and acquired the belief which is the basis of claim.

(c) The name and present address of the individual upon whom the applicant relies most for religious guidance in matters of conviction relating to claim.

(d) A statement as to circumstances, if any, under which the applicant believes in the use of force.

(e) A description of the actions and behavior in the applicant's life which in his opinion most conspicuously demonstrates the consistency and depth of religious convictions which gave rise to claim.

(f) A statement as to whether applicant has ever given public expression, written or oral to the views expressed in his application as the basis for claim. If so, specify when and where.

(3) *Participation in organizations.*

(a) Information as to whether applicant has ever been a member of any military organization or establishment before entering upon his present terms of service. If so, the name and address of such organization will be given together with reasons why he became a member.

(b) A statement as to whether applicant is a member of a religious sect

or organization. If so, the statement will show the following:

1. The name of the sect, and the name and location of its governing body or head, if known.

2. When, where, and how the applicant became a member of said sect or organization.

3. The name and location of any church, congregation, or meeting which the applicant customarily attends.

4. The name, title, and present address of the pastor or leader of such church, congregation, or meeting.

5. A description of the creed or official statements if any, and if they are known to him, of said religious sect or organization in relation to participation in war.

(c) A description of applicant's relationships with and activities in all organizations with which he is or has been affiliated, other than military, political, or labor organizations.

(4) *References.* Submit statements of individuals who can attest to the sincerity of applicant's professed convictions regarding participation in war. Such statements should reflect the individual's full name, address, occupation or position, and relationship to applicant.

b. The application for discharge will be submitted to the commander having custody of the member's records as outlined below.

(1) *Unit members.* ARNGUS and USAR members assigned to units will submit their applications to the commanding officer of the unit to which assigned. Members of the inactive National Guard will submit their applications to commanding officer of the unit to which attached * * *

7. *Procedures.* a. Commanders having custody of the member's records will take the actions prescribed below * * *

b. The commander will arrange for the applicant to be interviewed. Expenditure of funds or the use of Government transportation for applicants in connection with these actions is not authorized.

(1) Applicant will be interviewed by a military chaplain preferably of the applicant's faith, who may be from any component of the Armed Forces. The chaplain will submit a report of interview to the commander to include comments on the sincerity of the applicant in his belief and an opinion as to the source of the applicant's belief.

(2) Applicant will be interviewed by a military medical officer, preferably one trained in and practicing psychiatry, who may be from any component of the Armed Forces. The medical officer will submit a report of psychiatric evaluation to the commander indicating the presence or absence of any psychiatric disorder which would warrant treatment of the applicant or disposition of records through medical channels.

(3) The applicant will be afforded an opportunity to appear in person (with counsel retained by him if he desires) before an officer, other than required in (1) and (2) above, in the grade of 0–3 or higher, who is knowledgeable in policies and procedures relating to conscientious objector matters. The officer conducting the interview will permit the applicant to be heard in support of his application and he will make such other inquiries into the merits of the application as he considers appropriate. The officer conducting the interview will submit in writing his recommendations, and reasons therefor, to the commander. If the applicant waives the opportunity to be heard, his waiver will be obtained in writing and made an inclosure to the application for discharge. * * *

e. Applications for discharge, together with inclosures, and Military Personnel Records Jacket, U. S. Army (DA Form 201), will be forwarded in accordance with f or g below, whichever is appropriate, by indorsement as follows:

(1) The immediate commander's comment will include the following information:

(a) Whether approval or disapproval is recommended and the reasons therefor.

(b) Date of appointment or current enlistment.

(c) Duty and primary MOS (enlisted personnel only).

(d) Whether medical board or physical evaluation board proceedings are pending or appropriate.

(e) Whether the member is under any type of investigation, absent without leave, or whether any flagging action has been taken in accordance with AR 600–31.

(2) Other forwarding indorsements will include recommendation for approval or disapproval and any other remarks as may be pertinent.

f. Application submitted by ARN-GUS personnel will be forwarded to the appropriate State adjutant general who will forward the case to the Chief, National Guard Bureau, Department of the Army, Washington, D. C. 20310.

g. Applications submitted by USAR personnel will be forwarded through military channels to the Commanding Officer, U. S. Army Reserve Components Personnel Center, ATTN: RCPA, Fort Benjamin Harrison, Ind. 46249.

h. Application for discharge received for disposition as indicated in f or g above will be referred to the Selective Service System (SSS) for an advisory opinion when the applicant has less than one hundred and eighty (180) days of active duty. When the applicant has more than one hundred and eighty (180) days of active duty, the SSS advisory opinion will be optional.

i. The Commanding Officer, U. S. Army Reserve Components Personnel Center, will convene a board of officers to determine findings and submit recommendations on all applications for discharge submitted under this regulation.

\* \* \*

8. *Assignment.* An individual who applies for discharge based on conscientious objection will be assigned duties providing the minimum conflict with his professed beliefs and will be required to maintain the same standards of perform-ance and behavior as other personnel assigned to his unit pending a final decision on his application. This paragraph will not be applicable when subsequent applications are filed by an individual based upon substantially the same supporting information as previously submitted and disapproved by Headquarters, Department of the Army (para. 12).

9. *Disposition of individuals determined to be bona fide conscientious objectors.* a. *Discharge of personnel classified 1–0.* When authorized by Headquarters, Department of the Army, individuals who have been determined to be bona fide conscientious objectors with classification 1–0 will be discharged for the convenience of the Government in accordance with AR 135–175 or AR 135–178, whichever is appropriate. Conscientious objection will be specifically cited in the discharge order as the supporting reason when that is the sole reason for discharge.

b. *Disposition and utilization of personnel classified 1-A-0.* Individuals who are bona fide conscientious objectors with classification 1–A–0 will be identified by an entry on the individual's DA Form 20 (Enlisted Qualification Record) or DA Form 66 (Officer Qualification Record) as provided by AR 600–200 and AR 611–103. Such individuals will be required to complete their Ready Reserve and statutory obligation or term of enlistment subject to the assignment instructions outlined below. Individuals assigned in accordance with the provisions of (1) below will be required to sign and date the following statement:

I have been counseled concerning designation as a conscientious objector. Based on my religious training and belief, I consider myself to be a conscientious objector within the meaning of the statute and regulations governing conscientious objectors and am conscientiously opposed to participation in combat training and service. I request assignment to noncombatant duties for the remainder of my term of service. I fully understand that on

expiration of my current term of service, I am not eligible for voluntary enlistment, reenlistment, extension, or amendment of current enlistment, or active service in the Armed Forces.

December 10, 1968, petitioner enlisted in the United States Army Reserve. His contract of enlistment is in evidence as Pl. Ex. 3a. The location of his reserve activity was the 331st General Hospital, Lawrence, Massachusetts. He was placed under the command of respondent Col. Willis, his Reserve Unit Commander.

April 28, 1968, pursuant to AR 135–25, quoted above, petitioner made application for discharge as a conscientious objector. Accompanying the application he wrote a four page letter, dated April 28. He stated that "By reason of my religious training and belief, I am conscientiously opposed to participation in war in any form. I am ready to work under the Conscientious Objectors Work Program as a means of serving my country in place of participation in the military and would accept assignment by my Selective Service Board for such placement." He explained how his attitude had developed during the four and a half months he had been in the Reserve. He referred to counseling with a clergyman and others, and to private meditation. He expressed his opposition to all war and killing. He asserted that as a matter of conscience he regarded war as immoral; that he reached this conclusion from a moral and religious view; that his religious training and belief were traditional Jewish beliefs; and that those beliefs arose out of that upbringing; but his beliefs transcended his Jewish feelings.

With the application, petitioner submitted the following two communications.

In a letter, dated April 28, Father Drinan, dean of Boston College Law School, which petitioner was attending, wrote that he had discussed extensively with petitioner his application. He, after referring to the *Seeger* case, declared that "I am persuaded that Mr. Silberberg is totally sincere in his convictions and that his conscience compels him to request that he be permitted to do civilian work rather than military service which would directly involve him in duties which would be contrary to the dictates of his conscience."

In a letter dated April 29, Sanford N. Katz, one of his professors of law, wrote that "Mr. Silberberg and I have discussed at great lengths his ethical and moral beliefs about war. He is opposed to war and killing. This is a matter of conscience with him. He has developed these strong beliefs from his religious training and his readings in philosophy and human thought." Professor Katz emphasized that "I believe in his honesty and sincerity."

May 14, 1969 respondent Col. Willis informed the Commanding General, 804th Hospital Center, Army Base, Boston, with respect to petitioner's application

"1. Approval of the basic request recommended for the following reasons.

2. After personal interview with the EM, it is felt that his statements in previous communications regarding his status as a conscientious objector based on his relegious [sic] beliefs are sincere."

Thereafter on June 6, 1969 George W. Halstead, Chaplain LTC, 331st General Hospital, Camp Drum, New York, had a conference with petitioner. He then wrote the following four paragraphs:

"1. I have had an informal conference today with Alan Silberberg ER11521358 concerning his convictions as a conscientious objector.

2. At the time of his enlistment these convictions were not developed to the point that they are at present. He questions whether he should not have examined himself more rigorously prior to his enlistment.

3. As a result of my interview, I have no reservations about his total sincerity. I am convinced of that sincerity. Observe, however, that I have had no prior acquaintance with him against which to test this impression.

4. The source of his opinion and belief would not appear to be from specific religious instruction or training. However, it does appear to me to be religious in character, as serving that place in his personality integration served by religion. His convictions appear to be based upon his reading and training in intellectual discipline and moral discrimination in connection with the pursuit of his education as a lawyer."

On June 11, 1969 E. J. Khantzian, Major MC USAR, Chief of the Neuropsychiatric Section of the same Army hospital, wrote the following two paragraphs:

"1. I have examined Alan Silberberg with regard to his request for conscientious objector status.

2. It is my impression that this man is [a] sincere person and bases his request on personal and intellectual convictions. I do not feel he suffers from any psychiatric condition."

The Conscientious Objector Review Board had no other evidence before it. However, it did have an opinion by an assistant to General Hershey, Director of the Selective Service System that petitioner "would not be classified as a conscientious objector if he were being considered for classification under the Military Selective Service Act of 1967." September 5 the Board recommended denial of petitioner's application. The Board recited that it "believed that his application was founded on philosophical views and a personal moral code * * * Furthermore, the Board doubted the sincerity of his alleged beliefs and believed his application to be poorly grounded in religious training and belief * *. [The supporting letters] do not depict any religious training or experiences that have occurred before or after his entry into military service that could have had any influence on his conscience in the short space of 4½ months of USAR service." The Board claimed that Chaplain Halstead "qualifies his favorable opinion of PVT Silberberg's sincerity."

[This statement is made despite the Chaplain's declaration that "As a result of my interview, I have no reservations about his total sincerity. I am convinced of that sincerity."] Then, with an inexplicable distortion, the Board purports to quote the Chaplain but omits the second sentence of the following paragraph: "The source of his opinion and belief would not appear to be from specific religious instruction or training. *However, it does appear to me to be religious in character, as serving that place in his personality integration served by religion.* His convictions appear to be based upon his reading and training in intellectual discipline and moral discrimination in connection with the pursuit of his education as a lawyer." (Emphasis added in this opinion). The Board concluded, without referring to Col. Willis' evidence, "In summary, this individual's beliefs are based on reasons that are grounds for automatic disqualification for conscientious objector classification. Further, the Board was unimpressed with the sincerity of the applicant, and unanimously find that his beliefs are not truly held."

The Convening Authority approved the Board's recommendation that petitioner's application be denied. Petitioner received notice of the decision by telephone October 4 and by writing October 6.

October 7, the Department of the Army from Fort George C. Meade, Maryland, ordered petitioner attached to U. S. Army Reception Station, Fort Bliss, Texas, reporting date November 11.

Petitioner received the order. He did not apply, pursuant to Army Regulation 140–111–par. 1–2 incorporating Army Regulation 135–200, to the Chief of Personnel Operations, Fort Harrison, Indiana, for a delay in reporting date.

November 7, 1969 petitioner filed in this Court the instant petition for a writ of habeas corpus. It prayed that the Court "set out" a return date of three days; that respondents not remove petitioner pending final determination; and that petitioner be discharged from

the Armed Services. Petitioner's senior and junior counsel diligently sought to serve all respondents. They did serve respondent Col. Willis on November 10, and the respondent Secretaries on November 12.

November 10, after Col. Willis had been served, this Court held a hearing on the petition. Neither the counsel nor the Court could determine on November 10, though the Court sat until 5:30 P.M. hearing the case, whether as of that day Col. Willis had any authority over petitioner. After making findings showing the uncertain posture of petitioner, this Court restrained "until it holds a hearing on Tuesday, November 25, 1969, respondent Col. Albert W. Willis, Lawrence Reserve Center, and anyone acting under his orders or direction, or in cooperation with him, from removing petitioner, Alan Silberberg, from this District of Massachusetts, or from this Court's jurisdiction, or from taking any steps to place petitioner on active duty with the United States Army or the United States Army Reserve."

Respondents have moved to dismiss the petition on various preliminary grounds: such as, improper service upon respondent Col. Willis, improper venue as to the other respondents, and, most importantly, want of jurisdiction of this Court to determine the validity of respondents' authority over, or custody of, petitioner inasmuch as he is, in respondents' view, AWOL from Texas where he should be in custody, or, to use a more accurate term, in service.

None of those grounds is tenable.

■ Petitioner's counsel properly served all the respondents. See Rules 4 (b), (d) (4) and (5) of the Rules of Civil Procedure. The person who served respondent Willis about 2:30 P.M. on November 10 acted in accordance with authority properly given to or delegated to that process server; that process server adequately identified himself; and the United States was fully informed before that time as a result of a colloquy in open court, on the morning of November 10, participated in by the Assistant United States Attorney, acting for the United States, the Attorney General, and all respondents. It follows that this Court had personal jurisdiction over respondent Col. Willis at the afternoon hearing which began about 4 P.M. on November 10.

■ As of November 10, however, service had not been made on the respondent Secretaries. Although they were in the District of Columbia they were validly served on November 12. They then became subject to the jurisdiction of this Court over their persons. This follows from 28 U.S.C. Sec. 1391(e) which broadens the venue of actions against heads of executive departments and provides for extraterritorial service of process. 2 Moore's Federal Practice, 2nd ed., p. 1210.

■ The point made as to the petitioner's being AWOL misconceives the facts and misapplies United States ex rel. Rudick v. Laird, 2nd Cir., 412 F.2d 16, and Andrew F. Wiessner v. Col. F. W. Donahue, D.Mass., Misc. Civ. 69–74–G, Oct. 31, 1969.

In the case at bar petitioner was in Massachusetts when he filed his petition. He was then subject to the command of Col. Willis, his reserve unit commander at the 331st General Hospital, Lawrence, Massachusetts. That commander's authority over him did not cease before November 11 when he was due to report in Texas. Only then did he become attached to the Reception Station at Fort Bliss, Texas pursuant to the October 7 order issued from Fort Meade, Maryland. It was while petitioner was subject to his reserve unit commander, Col. Willis, in Massachusetts, that this Court entertained the petition and first heard the case. It was not petitioner's fault that this Court did not act forthwith on the petition.

Moreover, even if the custody of Col. Willis has now expired (which is not clear, in the light of this Court's restraining order issued November 10) the custody of the two respondent Secretar-

ies continues. While the petitioner was on official duty lawfully within Massachusetts, he invoked this Court's jurisdiction over those respondents as well as respondent Col. Willis.

There is no merit to the suggestion that petitioner ought to be denied relief because he had become AWOL by not reporting to Texas on November 11, the day before the Secretaries were served. Probably, in the light of this Court's November 10 order, petitioner did not become AWOL by remaining here until the already begun hearing of this case could be concluded.

Moreover, if petitioner did technically become AWOL in the two days between the time this Court's jurisdiction was invoked and the time respondent Secretaries were served, that technical change of status should not be counted because of the almost inevitable delay in reaching the persons of the two respondent Secretaries. Petitioner did not seek the delay, nor make a capricious choice of forum by going into a new district where he was or became AWOL in the ordinary sense of that term. He indeed continued to report for reserve duty in Massachusetts. Thus petitioner's position is not vulnerable as was that of the petitioners in the *Rudick* and *Wiessner* cases.

This brings us to the merits of petitioner's case.

■ Section 5(b) of Army Regulation 135–25, quoted above, recognizes as a basis for discharge "claims based on conscientious objection growing out of experiences prior to entering military service, but which did not become fixed until entry into the service." Sec. 3(b) explains that the term "conscientious objector" includes "An individual who, by reason of religious training and belief, has been found to be—(2) Conscientiously opposed to combatant training and service in the Armed Forces. * * *"

In connection with such a claim the applicant is required to give information such as the petitioner did in his letter of April 28. He is permitted, by Section 6(a) (4) to submit statements such as those written in this case by Father Drinan and Prof. Katz. And the applicant's commander is required by the Army to have the applicant interviewed by both a military chaplain and a military medical officer. See Section 9(b) (1) and (2). Also it is provided in Section 7(e) that there shall be added the immediate commander's approval or disapproval. Such approval, with supporting reasons, was given by Col. Willis in this case, as noted previously.

It is obvious that the chaplain, the psychiatrist, and the commander are in effect Army witnesses, who, if not technically hostile, are not likely to be as friendly as the supporting witnesses called by the applicant himself.

A major point in this case is that all of the witnesses, both the Army's and the petitioner's, agree that he is sincere. Inasmuch as the Board never saw petitioner himself, it is manifest that it could not reasonably conclude that plaintiff was not sincere unless the text of the petitioner's own letter so indicated. A full reading of that letter reveals no insincerity. It contradicts rather than supports the Board's statement that it does not reflect "any religious training or experiences that have occurred before or after his entry into military service." Indeed, the Board's opinion gives the impression of being composed of clichés regularly used—what lawyers sometimes call "boiler plate."

The Board has given a niggardly application to Section 5 of the regulation which provides that "claims based on conscientious objection growing out of experiences [presumably including early religious training] prior to entering military service, will be considered." Unlike the authors of the regulation, the Board appears hesitant to recognize that men of the highest standard of conscientious belief may put off their final commitment until necessity gives no choice. It has always been regarded as consistent with spirituality and nobility of character for men of conscientious scruples

to continue to examine a moral problem until the final hour of decision, and meanwhile to reflect on their respective duties to conscience and to the social order. The delayed pronouncement of Sir Thomas More is often cited as an example of how a conscientious man should act. And, indeed, this course has been recommended in a situation almost precisely parallel to Silberberg's. See article on CIVIL DISOBEDIENCE, first published in The Atlantic Monthly, Vol. 221, p. 58, February 1968.

In short, it is plain that the Board's finding that petitioner's beliefs are not truly held cannot stand.

Another point is less clear: that is, was the Board in its summary finding, warranted in concluding that "this individual's beliefs are based on reasons that are grounds for automatic disqualification for conscientious objector classification"? In the words of Section 3c of the regulation, was "his application founded on philosophical views and a personal code"; or, on the contrary, was he, in the words of Section 3b "by reason of religious training and belief" conscientiously opposed to combatant training and service in the Armed Forces?

The Board discounted what the Army's own witnesses declared. The Army's chief witness was its chaplain, who, it may be conjectured, was not peculiarly sympathetic to petitioner, inasmuch as he was not, as was preferable, under Section 7b(1) of the regulation, "of the applicant's faith." The chaplain's whole statement, unlike the Board's truncated version, brings petitioner within the conscientious class as defined by the regulation. So does the statement of petitioner's own military commander. Less surprisingly, the same is true of petitioner's own witnesses. One of them, Father Drinan, was, by his double vocation, singularly informed of both religious and legal issues. Since estimates of credibility were for the Board, it need not be added that he has a national reputation for high personal and professional character.

There is nothing in Major Khantzian's testimony which an attentive trier of fact would regard as contrary. As a military medical officer, he was called, pursuant to Section 7b(2), solely to make a "psychiatric evaluation * * * indicating the presence or absence of any psychiatric disorder. When he referred to petitioner's personal and intellectual convictions, the doctor went beyond the question addressed to him and beyond his competence as an expert. Moreover, the word "personal" is ambiguous and may include personal religious convictions, at least as that term might be defined by a careful reader of United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733.

In scrutinizing the Board's finding and ultimately the Army's action, this Court is bound to rule in accordance with Bates v. Commander, First Coast Guard District, 1st Cir., 413 F.2d 475 and Nason v. Secretary of the Army, D.Mass., Sept. 23, 1969, 304 F.Supp. 422. Those cases require this Court to conclude that there was no substantial evidence supporting the military determination that petitioner was not, within the meaning of the Army's own regulation, a conscientious objector.

It follows that petitioner cannot be required to report for training and service for combatant duties. But petitioner's own application, his written statement, and the testimony he gave before this Court as to his continuing to perform noncombatant tasks in the Army, even after he filed his petition in this Court, all suggest that there is no reason why the Army is not free to assign him to noncombatant duties, as indicated by Section 9 of the regulation.

The Army ought to be given one month in which to consider which alternative it prefers: to discharge petitioner or to reassign him. See Mahler v. Eby, 264 U.S. 32, 46, 44 S.Ct. 283, 68 L.Ed. 549.

So ordered.