In the Matter of Walter N. GREGORY, Ensign, SC, USN, Petitioner,

v.

Melvin LAIRD, Secretary of Defense, John Chafee, Secretary of the Navy, and Vice Admiral William F. Bringle, Commander Naval Air Force, U. S. Pacific Fleet, San Diego, California, Respondents.

Civ. No. 71–116–GT.

United States District Court, S. D. California.

May 12, 1971.

Jeffrey H. Freedman, Porter & Savitz, San Diego, Cal., for petitioner.

Harry D. Steward, U. S. Atty., by Frederick B. Holoboff, Asst. U. S. Atty., San Diego, Cal., for respondents.

MEMORANDUM DECISION
AND ORDER

GORDON THOMPSON, Jr., District
Judge.

The sole question before the court is
whether the District Court for the
Southern District of California has ju-
risdiction to entertain on the merits pe-
titioner's application for a writ of ha-
beas corpus. Specifically, the court has
been asked to decide whether petitioner
has named as a respondent any custodi-
an, or one in the chain of command, who
is within the territorial jurisdiction of
this court, and upon whom the writ can
be spent, within the meaning of Schlan-
ger v. Seamans, 401 U.S. 487, 91 S.Ct.
995, 28 L.Ed.2d 251, decided March 23,
1971.

Petitioner is an ensign in the U.S.
Navy, Supply Corps. On January 9,
1971, while stationed aboard the U.S.S.
Hancock (CVA 19), deployed in the
Western Pacific, petitioner made appli-
cation for discharge as a conscientious
objector pursuant to DoD Directive
1300.6 and BUPERS Note 1900. On
February 9, 1971, petitioner received or-
ders from the commanding officer of the
Hancock to proceed to the Commander
Naval Air Force, U.S. Pacific Fleet
(COMNAVAIRPAC), Naval Air Sta-
tion, North Island, San Diego, Califor-
nia, for temporary additional duty
(TAD) for a period of about 90 days.
The orders stated that petitioner should
await further assignment by the Chief
of Naval Personnel, and that upon com-
pletion thereof he would return to his
parent activity. By letter dated Febru-
ary 24, 1971, the petitioner's application
for discharge was denied.

Petitioner remained on duty at NAS
North Island until approximately 9:30
A.M., March 31, 1971. At that time pe-
titioner was handed his TAD orders,
along with a memorandum endorsement,
directing him to report to Travis Air
Force Base prior to 2:00 P.M., April 1,
1971, for return to the Hancock. At ap-
proximately 4:00 P.M. the afternoon of
March 31, the instant petition for writ
of habeas corpus was filed in this court.
Named as respondents were the Secre-
tary of Defense, the Secretary of the
Navy, and Vice-Admiral William F. Brin-
gle, Commander Naval Air Force, U.S.
Pacific Fleet, NAS North Island, San
Diego, California. Following the denial
of petitioner's request for a temporary
restraining order preventing his removal
from the jurisdiction, petitioner com-
plied with his orders and is now aboard
the Hancock in the Western Pacific.

On April 26, 1971, respondents filed a
motion to dismiss the petition on the
grounds that this court lacked jurisdic-
tion to entertain the petition on the
merits. At the hearings on the motion
the court heard expert testimony and ar-
gument of counsel.

The power of the district
court to grant a writ of habeas corpus is
provided by 28 U.S.C. § 2241(a). Juris-
diction to grant the writ to members of
the military stems from 28 U.S.C. §
2241(c) (1). See also Glazier v. Hackel,
440 F.2d 592 (9th Cir. 1971), and the
cases cited therein. The petition must
name petitioner's custodian, 28 U.S.C. §
2242, and the custodian must be named
as a respondent. 28 U.S.C. § 2243.
When the petitioner is being detained by
the military, usually the proper respon-
dent is the commander of the military
post. Eagles v. United States ex rel.
Samuels, 329 U.S. 304, 67 S.Ct. 313, 91
L.Ed. 308 (1946). Petitioner's subse-
quent removal from the territorial juris-
diction of the court in which the petition
has been filed will not defeat the court's
jurisdiction if it had already attached.
Ex parte Endo, 323 U.S. 283, 65 S.Ct.
208, 89 L.Ed. 243 (1944).

Of the three respondents named in the
petition, only one—Vice-Admiral Bringle
—is a resident of this judicial district
or amenable to its process. Therefore,
jurisdiction can exist only if he is found
to be a proper respondent to the peti-
tion.

Petitioner attempts to sustain juris-
diction on two different theories. First,
it is alleged that, at the time the peti-

tion was filed, petitioner was still attached to his temporary additional duty station, and therefore, that Vice-Admiral Bringle was petitioner's custodian. Second, petitioner argues that even if he had already been detached from that command when his petition was filed, Vice-Admiral Bringle nevertheless is a proper respondent because petitioner is in his chain of command.

### I

■ Upon graduation from Naval Supply Corps School in January 1970, petitioner reported aboard his permanent duty station, the *Hancock*. His departure for NAS North Island pursuant to his TAD orders on February 9, 1971, did not alter the fact that his permanent duty station was still the *Hancock*. BUPERSINST. 1321.2G, ¶3a. However, the TAD orders did make him subject concurrently to the command of Vice-Admiral Bringle. BUPERSMAN 1810100, ¶3. Therefore, prior to 9:30 A.M. on March 31, 1971, petitioner was effectively within the custody of both Vice-Admiral Bringle and the commanding officer of the *Hancock*. Either one or both would have been a proper respondent had petitioner filed his petition in the district court in which the respondents resided.

However, at 9:30 A.M. on March 31, petitioner was handed his orders to return to the *Hancock*. A memorandum endorsement to those orders from COM-NAVAIRPAC to petitioner states therein: "Delivered and detached this date." Petitioner argues that said detachment was not effective until the close of the business day. Respondents argue that the detachment occurred at the moment that the orders were handed to petitioner.

Petitioner has cited various sections of BUPERS Manual in support of his contention. However, the court is not convinced that those regulations lead to the conclusion drawn by petitioner. Furthermore, expert testimony of the personnel officer at NAS North Island adduced at the hearing indicated that detachment occurs at the time when the orders are endorsed and delivered to the recipient.

■ It is the conclusion of this court that petitioner was detached at 9:30 A. M. when he was handed his endorsed orders, and that Vice-Admiral Bringle ceased being his custodian at that time. Therefore, when the petition was filed later that same day, Vice-Admiral Bringle was not a proper respondent under the theory that he was petitioner's custodian.

### II

Alternatively, petitioner argues that Vice-Admiral Bringle is a proper respondent for purposes of upholding jurisdiction because petitioner is in his chain of command. Respondents argue that Vice-Admiral Bringle is not within that class of people in the chain of command upon whom the writ can be spent. Both parties rely heavily upon Schlanger v. Seamans, *supra*.

In *Schlanger*, petitioner was an Air Force enlisted man permanently assigned to duty at Moody AFB in Georgia. While on "permissive temporary duty" at Arizona State University, he filed a petition for writ of habeas corpus in the Arizona District Court, naming as respondents the Secretary of the Air Force, the commander of Moody AFB, and the commander of the AFROTC station on the university campus. The last respondent was the only one present in Arizona, but petitioner was not attached to the AFROTC unit. Petitioner conceded that the AFROTC commander had no control over him and was not in his chain of command.

The Supreme Court framed the issue as follows: "whether any custodian, or one in the chain of command, * * * must be in the territorial jurisdiction of the District Court." 401 U.S. at 489, 91 S.Ct. at 997. Since the AFROTC commander was neither petitioner's custodian nor one in his chain of command, the Court concluded that he was not a proper respondent.

By interjecting the phrase "or one in the chain of command," the Supreme Court has inferred that someone within a petitioner's chain of command upon whom the writ could be spent would be a proper respondent. In *Schlanger*, it was conceded that there was no one within the chain of command who was within the territorial jurisdiction of the district court. In the instant case, however, petitioner claims that Vice-Admiral Bringle is such a person. Thus, this court has been faced with the difficult task of determining whether Vice-Admiral Bringle is within petitioner's chain of command as that phrase is used in *Schlanger*.

■ The Supreme Court did not expressly define the phrase "chain of command" in the *Schlanger* decision. Within the military establishment that relatively simple phrase is used to describe a hierarchy of responsible parties. But it is readily apparent that there are numerous chains of command organized to serve different functions, and that certain individuals fit into more than one such chain. *Schlanger*, however, was concerned with that chain of command which has the power to control the petitioner—that chain of command made up of people against whom a writ could be spent. From the evidence presented to the court, it does not appear that Vice-Admiral Bringle, in his capacity as COMNAVAIRPAC, fits within that chain of command.

■ While it is true that the *Hancock*, an aircraft carrier, and its commanding officer are within an administrative chain of command which also includes COMNAVAIRPAC, that command relationship is not that contemplated by *Schlanger*. COMNAVAIRPAC exercises certain administrative controls over all units of the naval air force. This includes certain aspects of personnel management and training, but it does not include the authority to order a change in permanent duty stations, to order discharge by reason of conscientious objection to military service, or to order a unit commander to transfer a member of his command to another unit. If this court were to issue a writ directing COMNAVAIRPAC to produce the body of petitioner before this court, the only method by which he could comply, absent the independent concurrence of the *Hancock's* commanding officer, would be by request directed to that commanding officer, to some other responsible party in the *Hancock's* operational chain of command, or to the Chief of Naval Personnel.

■ Therefore, since the writ could not be spent against COMNAVAIRPAC, it is concluded that he is not within petitioner's chain of command as that phrase is used in *Schlanger*. Since petitioner has not named as a respondent either a custodian, or one in the chain of command, who is in the territorial jurisdiction of the Southern District of California, this court lacks jurisdiction to reach the merits of the petition.

### III

The court recognizes the existence of an additional jurisdictional problem not raised by the respondents. That is, since petitioner was detached from NAS North Island before he filed his petition, was he in fact in custody within this jurisdiction when the petition was filed, in light of the fact that his custodian, the commanding officer of the *Hancock*, was not present within the jurisdiction. An identical problem existed in the *Schlanger* case, but was not decided. The Supreme Court stated that the absent custodian "exerted control over petitioner in the sense that his arm was long and petitioner was effectively subject to his orders and directions. There are cases which suggest that such control to establish custody may be adequate for habeas corpus jurisdiction even though the control is exercised from a point located outside the state, as long as the petitioner is in the district or the State. Donigan v. Laird, [D.C.] 308 F.Supp. 449." 401 U.S. at 489, 91 S.Ct. at 997.

In light of this court's ruling relative to jurisdiction over the respondents, it is likewise unnecessary to reach this additional issue.

Accordingly,

It Is Ordered that the instant petition for writ of habeas corpus be dismissed for lack of jurisdiction.