**Daniel Edward HENRY, etc., et al., Individually and on behalf of all persons similarly situated, and Stephen L. Bray II and Michael A. Ness, Intervenors, Petitioners-Plaintiffs,**

v.

**Honorable John E. WARNER, Individually and in his capacity as Secretary of the Navy, et al., Respondents-Defendants.**

**No. 73–354–DWW.**

United States District Court, C. D. California.

April 13, 1973.

Nathan Zahm, Sherman Oaks, Cal., for petitioners-plaintiffs.

William D. Keller, U. S. Atty., by John E. Nordin, Joel Levine, Asst. U. S. Attys., Los Angeles, Cal., Lt. Commander Carl Horst, JAG Corps U. S. Navy, Naval Air Station, Miramar, San Diego, Cal., for respondents-defendants.

## MEMORANDUM OPINION

DAVID W. WILLIAMS, District Judge.

The Petitioners-Plaintiffs (hereinafter Petitioners) are either members of the United States Navy or the Marine Corps and they have been charged with relatively minor offenses which constitute violations of the Uniform Code of Military Justice (hereinafter UCMJ). Petitioners, Henry and Kirby were charged with "unauthorized absence;" McLean was charged with the same offense, "misbehavior of sentry on post," and "disrespect to a non-commissioned officer." Each was convicted at a summary court-martial proceeding at which he was not represented by legal counsel and each was ordered confined for a period not to exceed 30 days. Petitioners Haecker, Jackson, Mims and Petitioner-Plaintiff-Intervenors (hereinafter Petitioners) were charged with various similar infractions and ordered to stand trial at a summary court-martial on a date yet to be fixed, at which no legal counsel would be provided.

The UCMJ, 10 U.S.C. 816(3), 820 and 824 creates a "summary court-martial consisting of a non-commissioned officer" which is given jurisdiction to try all persons subject to the UCMJ except officers, cadets, aviation cadets and midshipmen, for non-capital offenses, and is authorized to adjudge punishment up-

on conviction no greater than confinement at hard labor for one month and certain ancillary punishment. At the outset of a summary court-martial an accused is advised by the summary court officer of the nature of the charges against him, "by whom he is accused", a general statement of his right to plead not guilty and confront witnesses against him, to present evidence in his own behalf and to be assisted in this endeavor by the summary court-martial officer. A plea of guilty cannot be accepted by the summary court-martial officer unless he is satisfied that an accused voluntarily waives his right to a trial, understands the elements of the offense and the consequences of his plea. The accused is further advised that if tried by summary court-martial he will not be represented by appointed military counsel but that the summary court-martial officer (who subsequently determines the guilt or innocence of the accused) will thoroughly and impartially inquire into both sides of the matter and will assure that the interest of both the Government and the accused are safeguarded. The accused is further told that if he desires representation by appointed counsel he must object. to trial by summary court-martial and that if his case is then referred to a special court-martial, he will be provided counsel. However, if the accused makes the decision that causes him to be tried before a special court-martial (with counsel) instead of a summary court-martial (without counsel) he subjects himself upon conviction to the possibility of a greater period of incarceration and stiffer ancillary punishment than would be possible in a summary court-martial.

At the outset, it should be understood that even in the case of an aggravated offense tried in special or general court-martial, the accused is not necessarily provided with a legal counsel who is trained as a lawyer or a member of the bar of some state. He is furnished a nonlawyer legal aide who has had training in the handling of trials in the military; a similarly trained member of the military personnel is assigned to handle the Government's prosecution of the charge.

The verified petition for a Writ of Habeas Corpus of Petitioners Daniel Edward Henry, John Thomas Kirby, and Kenneth Wayne McLean, individually and on behalf of all persons similarly situated, and the complaint of said Petitioners and of David Alan Haecker, A. C. Jackson, and Aubry Duglass Mims, individually and on behalf of all persons similarly situated, for injunctive, mandamus, and declaratory relief, together with motions for a temporary restraining order and preliminary injunction order designating the action as a class action, and an order allowing Petitioners to proceed in forma pauperis, were filed in this Court on February 16, 1973.

Petitioners Stephen L. Bray II and Michael A. Ness whose motion to intervene in the petition for a Writ of Habeas Corpus, and other requested relief, having been previously filed under an order shortening time, were allowed as party-intervenors pursuant to FRCiv.P 24(a)(2). This Court further ordered issuance of a Writ of Habeas Corpus as to Kirby, Bray II, and Ness and their immediate release from confinement pending further order of the Court with regard to their respective convictions and sentencing by summary courts-martial. Finally, it was ordered that Respondent-Defendants (hereinafter Respondents) refrain from conducting any summary courts-martial within the territorial jurisdiction of this Court without affording the accused the assistance of counsel, pending further order of the Court.

At a subsequent hearing this court granted the motion by counsel for Petitioners that the hearing on the application for a preliminary injunction be consolidated with the trial of this action on the merits pursuant to FRCiv.P 65(a)(2), and that the named Petitioners be allowed to proceed in forma pauperis pursuant to 28 U.S.C. § 2250.

The trial procedure detailed above was and is the same procedure followed at

all U. S. Navy and U. S. Marine Corps installations and stations in conducting trials by summary court-martial. That procedure will continue to be utilized unless otherwise ordered by a court of competent jurisdiction, according to the opinion issued by the Judge Advocate General of the U. S. Navy. The Judge Advocate General maintains that the decision of the United States Supreme Court in Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) is not applicable to military summary court-martial procedures. The precise holding of *Argersinger* is "that absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." *Argersinger* at 37, 92 S.Ct. at 2012.[1]

Since the filing of the Petition and Complaint herein, and upon a request in chambers by this Court to Respondents, no summary court-martial has been conducted with respect to charges against Petitioners Haecker, Jackson, and Mims.

Service of process on each and all of the named Respondents was timely and properly made.

After hearing evidence and evaluating all papers filed with this Court, this Court grants Petitioners relief as a class pursuant to FRCiv.P 23(b)(2) and (c), defined below, in the form of habeas corpus pursuant to 28 U.S.C. § 2241 et seq. and in the nature of mandamus pursuant to 28 U.S.C. § 1361 against Respondents Warner, Zumwalt, and Cushman. It is further ordered that John E. Warner, Secretary of the Navy, Admiral Elmo Zumwalt, United States Navy, and General Robert E. Cushman, United States Marine Corps, direct their agents to insure that no summary courts-martial pursuant to 10 U.S.C. § 820 be commenced by the Navy or Marine Corps throughout the world unless the requirements of *Argersinger* are satisfied.[2]

It was to be ordered that the findings of guilt and sentence of Petitioners be vacated, subject, however, to retrial. As noted in Daigle v. Warner, 348 F.Supp. 1074 (D.Haw.1972), however, Navy regulations do not permit such retrial; thus, the respective sentences to confinement are adjudged invalid and the records of the proceedings are to be expunged.

## LEGAL ANALYSIS

The central issue in this case as in Daigle v. Warner, supra, is whether the decision in *Argersinger* applies to summary courts-martial proceedings conducted under 10 U.S.C. § 820.

Two other issues raised by the parties and worthy of analysis are the problem of the exhaustion of military remedies and whether a class of plaintiffs and/or a class of defendants should be recognized by this Court.

█ Granting Petitioners motion for a class action, I define the Petitioners class as all those persons who are members of the U. S. Navy and Marine Corps and who, 1) were or are now or will be required after April 16, 1973, to stand trial by summary courts-martial; 2) were not or are not advised of their right to assistance of counsel during their summary courts-martial proceedings, and if indigent, advised that counsel must be provided without cost;

1. The U.S. Army and the U.S. Air Force have voluntarily applied the ruling in *Argersinger*, supra, to summary court-martial procedures.

2. In Mead v. Parker, 464 F.2d 1108 (9th Cir. 1972), the Ninth Circuit notes the appropriateness of the mandamus and class action devices under these types of circumstances. 28 U.S.C. § 1361, grants the district courts original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to plaintiffs. This statute removes most of the difficulties which have limited actions against government officers or agencies which are in the nature of judicial review of administrative action. Included within this 1962 enactment are liberal provisions for venue and service of process in actions against federal agencies, officers, and employees. 28 U.S.C. § 1391(e).

and, 3) had not made a knowing and intelligent waiver of counsel.

The requirements of FRCiv.P 23(a) have been met in that this action is being maintained by members of the class; the class is quite numerous numbering several thousand persons; the question presented is a pure question of law common to all members of the class: the validity of summary courts-martial proceedings pursuant to 10 U.S.C. § 820 without the assistance of counsel. In addition, there is a fact common to the entire class: each member of the class has been, will be, or could be tried by a summary court-martial and either faces or could face incarceration without benefit of counsel. The claims of the representative parties are thus typical of the claims of the entire class. Because of this close identity the representative parties are thus typical of the claims of the entire class and will fairly and adequately protect the interests of the entire class.

Subsection (b) of FRCiv.P 23 provides that a class action may be maintained if the prerequisites of subdivision (a) are satisfied and one of the conditions set forth in subsection (b) are met. Among those conditions is "(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class . . . ."

■ It is quite clear that Respondents have acted and continue to act on precisely the same ground as to each member of the class: respondents are denying U. S. Navy and Marine Corps personnel facing summary courts-martial the assistance of counsel notwithstanding *Daigle*. It follows that the within action is a proper class action in the nature of mandamus (Levi v. Tarr, 343 F.Supp. 1120 (N.D.Cal.1972)) and by writ of habeas corpus (Mead v. Parker, 464 F.2d 1108 (9th Cir. 1972)).

"Nor can we agree that a petition for a writ of habeas corpus can never be treated as a class action. Certainly the usual habeas corpus case relates only to the individual petitioner and to his unique problem. But there can be cases, and this is one of them, where the relief sought can be of immediate benefit to a large and amorphous group. In such cases, it has been held, that a class action may be appropriate." *Mead* at 1112.

Necessity dictates that I consider concurrently with the issue of the existence of a class, whether this Court has jurisdiction over the appropriate Respondents so as to afford the class the relief they seek.

One argument put forth, and quite rightly, is that notwithstanding the scope of Petitioners' class, if this Court only has jurisdiction over a certain limited number of Respondents then the relief to be afforded will be limited to those subject to the authority of said Respondents. For example, it has been suggested that only Brigadier-General F. C. Lang, Commander of the Marine Corps Air Station, Santa Ana, California, and Major-General H. S. Hill, Commander of the Marine Corps Air Station, Santa Ana, California, the only two Respondents residing in this District, are subject to the Court's jurisdiction. Following this suggestion, Petitioners would correspondingly be limited to those within the control of Lang and Hill.

■ I reject this proposition and hold that the true custodians, those exercising ultimate control over the entire heretofore established class, are Respondents Secretary of the Navy Warner, Admiral of the Navy Zumwalt, and Commandant of the United States Marines Cushman.

The broad relief requested under the provisions of the Mandamus Act (28 U.S.C. § 1361), and by writ of habeas corpus depends on whether this Court is able to reach by process Warner, Zumwalt, and Cushman.

Unquestionably, this Court's jurisdiction extends to the perimeters of the Central District of California. I agree with Petitioners that this Court's jurisdiction extends beyond this district in terms of the effect this ruling must have upon military personnel in the Navy and Marine Corps and in the cus-

tody of Warner, Zumwalt and Cushman. For the purposes of satisfying in personam jurisdiction and venue requirements, service of process has been completed in accordance with the provisions of 28 U.S.C. § 1391(e). The constitutional requisite minimum contacts with the Central District of California have been established in that two naval bases are located within this jurisdiction; thus, the maintenance of this suit against Respondents Warner, Zumwalt, and Cushman does not offend traditional notions of fair play and substantial justice. International Shoe v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L. Ed. 95 (1945).

As previously stated, Mead v. Parker, supra, suggests the appropriateness of mandamus and habeas corpus relief under facts such as presented here. In *Mead,* however, the Ninth Circuit did not address itself to the broad scope of relief requested by our Petitioners.

I cannot agree with Petitioners that Braden v. Circuit Court of Kentucky, —— U.S. ——, 93 S.Ct. 1123, 35 L.Ed.2d 443 (1973) is dispositive of the question of whether the top military authorities in their respective chains of command may be deemed to be custodians of all persons under their command and authority, wherever situated.

In Strait v. Laird, 406 U.S. 341, 92 S.Ct. 1693, 32 L.Ed.2d 141 (1972), the Supreme Court suggests, however, at footnote 2 of the majority opinion, the possibility that such top officials, having "presence" by way of "contacts" in the various states, may properly be held to be custodians of all under their command and authority. Thus, serving process upon the Secretary of the Navy and the topmost commanding officers of the Navy and Marine Corps by virtue of 28 U.S.C. § 1391(e), should bring them under the jurisdiction of the federal district court for at least the purposes of a writ of habeas corpus. "Strait's com-

manding officer is 'present' in California through the officers in the hierarchy of the command who processed this serviceman's application for discharge." *Strait* at 145, 92 S.Ct. at 1695. In the same footnote the Supreme Court maintained: "That such 'presence' may suffice for personal jurisdiction is well settled, McGee v. Int'l Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Int'l Shoe Co. v. Washington, supra, and the concept is also not a novel one as regards habeas corpus jurisdiction. In Ex parte Endo, 323 U.S. 283, 65 S.Ct. 208, 89 L.Ed. 243 (1944), we said that habeas corpus may issue 'if a respondent who has custody of the prisoner is within reach of the court's process . . .' Strait's commanding officer is 'present' in California through his contacts in that State; he is therefore 'within reach' of the federal court in which Strait filed his petition . . ." *Strait,* Footnote 2 at 145, 92 S.Ct. at 1695.

In Donigian v. Laird, 308 F.Supp. 449 (D.Md.1969) the district court held as an open question whether the Secretary of Defense may be such custodian [3] but appears to hold that the Secretary of the Army *is* such a proper custodian if properly served. I note that *Donigian* may be distinguished from our facts in that plaintiff there had no ascertainable duty station. Positively holding that the Secretary of the Army and the Secretary of Defense are custodians for habeas corpus purposes when properly served is Silberberg v. Willis, 306 F.Supp. 1013 (D.Mass.1969). See 2 Moore's Federal Practice 2nd ed., p. 1210. Not deciding the question but noting the conflict between *Donigian* and *Silberberg* is Armstrong v. Wheeler, 321 F.Supp. 471, 478 (E.D.Pa.1970).

Finally, in the Ninth Circuit, the question appears to be left open in Jarrett v. Resor, 426 F.2d 213 (9th Cir. 1970) by the last sentence of the opinion at 217. In Gregory v. Laird,

3. "[A]lthough the status of the Secretary of Defense as a proper custodian is not

free from doubt . . ." Donigian at 452.

326 F.Supp. 704 (S.D.Cal.1971), however, the Court arguably indicates at 708 that the Chief of Naval Personnel would have been a proper custodian if properly served.

■ Justice Frankfurter in Burns v. Wilson, 346 U.S. 844, 74 S.Ct. 3, 98 L.Ed. 363 (1953) did not decide whether top military authorities in Washington were "custodians" of servicemen stationed anywhere in the United States. Certainly they may "open the doors of the jail" by merely ordering any subordinate who holds the key to do so. I hold that Respondent-Defendants Warner, Zumwalt, and Cushman are the custodians of the class herein described for the purpose of the writ of habeas corpus.

■ With regard to "actual notice of the order", it should be noted that this requirement of Rule 23(d) was fulfilled in *Daigle* by Judge Pence ordering the respondents to assure that the members of petitioners' class be informed of their rights and that Respondents order all under their authority to comply with the provisions of the Court's order. I conclude that a similar order by this Court, made to apply everywhere within the authority of the Respondents, would likewise satisfy the notice requirements.

The need for an order of such scope is clearly apparent, in view of the fact that the Navy and Marine Corps have chosen not to apply the rulings of *Argersinger* and *Daigle* to every person under their authority, but only in the territorial jurisdiction of the Hawaiian District Court. In *Daigle*, the Court gratuitously limited the scope of its order, apparently with the optimistic view that the Navy and the Marine Corps would voluntarily apply the ruling to all under their authority. With perspective, this Court certainly has no basis for sharing such view.

I find it unnecessary to reach the issue of whether Respondents should be designated a class in order to qualify the designated class of Petitioners for said requested relief. Having decided that this Court has jurisdiction over the true custodians of all Petitioners, it is sufficient that this action be maintained as a class action by a class of Petitioners and *not* necessarily against a class of Respondents.

In Braden v. Circuit Court of Kentucky, supra, the Supreme Court announced that it is no longer required that habeas corpus petitions be brought only in the district of the petitioner's confinement. The majority opinion of Mr. Justice Brennan declares at 1130 of 93 S.Ct. "Read literally, the language of § 2241(a) requires nothing more than that the court issuing the writ have jurisdiction over the custodian. So long as the custodian can be reached by service of process, the court can issue a writ 'within its jurisdiction' requiring that the prisoner be brought before the court for a hearing on his claim, or requiring that he be released outright from custody, *even* if the prisoner himself is confined outside the Court's territorial jurisdiction." (emphasis added).

■ Accordingly, those persons similarly situated as Petitioners herein, although outside this Court's territorial jurisdiction, may be the beneficiaries of the Court's writ of habeas corpus, wherever they are located at the time of its issuance. As members of the class of Petitioners herein, they are subject to this Court's writ so long as their respective custodian or custodians "can be reached by service of process."

■ The Navy and the Marine Corps, through counsel, have suggested that Petitioners have not exhausted their military remedies, thus this Court is without jurisdiction to hear their claims. I hold that it would be futile to require that Petitioners must exhaust their remedies within the military system because Col. Chadwick, highest ranking judge advocate officer of 3d Marine Aircraft Wing, F.M.F. Pac., Marine Corps Air Station, El Toro, Santa Ana, Calif., stated in a Staff Judge Advocate Memorandum dated October, 1972, that

it was the position of the command, in accord with the opinion of the Judge Advocate General of the Navy, that *Argersinger* did not apply to summary courts-martial. "The petitioner cannot 'properly be required to exhaust a remedy which may not exist.'" Parisi v. Davidson, 405 U.S. 34, 92 S.Ct. 815, 821, 31 L.Ed.2d 17 (1972).

Further, Colonel Max Halliday, Assistant Judge Advocate General for the Navy, actively participated for the defense in *Daigle* supra and contended that *Argersinger* was inapplicable to summary courts-martial.

The language and logic of these cases compel me to conclude as did the Court in *Daigle*: Acknowledging the special attributes of military justice these attributes "cannot justify denial of basic constitutional rights, when both these rights and the needs of the military can be successfully accommodated. By applying *Argersinger* to summary courts-martial, this court is not burdening the military with an inflexible and impossible requirement." *Daigle* 348 F.Supp. at 1080.

In an attempt to avoid merely reiterating the well-reasoned *Daigle* opinion, suffice to say that this Court incorporates by reference its discussion regarding the applicability of *Argersinger* to summary courts-martial proceedings under 10 U.S.C. § 810.

■ I would, however, emphasize several points. Stressing flexibility with respect to the decision as did Justice Brennan in his concurrence in *Argersinger*, the Court in *Daigle* maintained that the type and quality of representation required under *Argersinger* must vary perforce with the context of each particular case.

Undeniably, the Supreme Court was concerned with the apparent disparity in the dispensation of justice between those who were and those who were not represented by counsel: "There is evidence of the prejudice which results to misdemeanor defendants from this 'assembly-line justice.' One study concluded that 'Misdemeanants represented by attorneys are five times as likely to emerge from police court with all charges dismissed as are defendants who face similar charges without counsel." ACLU, Legal Counsel for Misdemeanants, Preliminary Report, 1 (1970)." *Argersinger* 407 U.S. at 36, 92 S.Ct. at 2012.

In *Daigle*, as here the Government argued that petitioners could have opted for general or special courts-martial and thus benefit from counsel. The Court in *Daigle* saw through this surface logic and recognized that by objecting to the summary court-martial proceeding (thus obtaining counsel) the accused is forced to run the risk of receiving a greater punishment sanctioned by the general and special courts-martial. The result flies in the face of the Supreme Court's articulated position against the doctrine of unconstitutional conditions—i. e., one cannot be 'punished' for the exercise of one's constitutional rights. United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968). Further, unconstitutional conditions on unemployment compensation (Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963)), tax exemptions (Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958)), public employment (Pickering v. Board of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)), bar admissions (Baird v. State Bar of Arizona, 401 U.S. 1, 91 S.Ct. 702, 27 L.Ed.2d 639 (1971)), and mailing privileges (Blount v. Rizzi, 400 U.S. 410, 91 S.Ct. 423, 27 L.Ed.2d 498 (1971)) have all been invalidated by the Supreme Court. In all of these cases, citizens were left free to exercise their constitutional rights so long as they were willing to give up a "gratuity" which the State had no obligation to provide. Yet in each the Supreme Court found that the discriminatory provision of a privilege placed too great a burden on constitutional freedoms.

■ Further, I reject the Government's argument that the peculiar needs of the military demand that *Argersinger*

requirements not be applied to summary courts-martial. There is no logical basis for the conclusion that an accused member of the military who might be imprisoned if convicted is any less in need of legal counsel than an accused civilian. Just as the Navy and Marine Corps meet the requirement of providing counsel for personnel accused of aggravated offenses, wherever the trial is held, so must it provide counsel for misdemeanants if the specter of imprisonment is present or possible.

Finally, the Government's argument that the summary court officer who serves as judge, prosecutor, and defense attorney, charged with assuring "that the interests of both the Government and the accused are safeguarded," satisfies *Argersinger* is rejected. The accused even in a summary court-martial is "entitled to his *own* counsel and not a multipurpose official who must assume three conflicting roles at the same time." Cf. In Re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

*Argersinger* is anchored in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) and Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) *Argersinger*, 407 U.S. at 31, 92 S.Ct. 2006.

The Supreme Court in *Gideon* states 372 U.S. at 344, 83 S.Ct. at 796: ". . . in our adversary system of criminal justice, any person hauled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him . . ." Stepping beyond *Gideon* the Court in *Argersinger* insisted: "Under the rule we announce today, every judge will know when the trial of a misdemeanor starts that no imprisonment may be imposed, even though local law permits it, unless the accused is represented by counsel.

"Further, the run of misdemeanors will not be affected by today's ruling. But in those that end up in the actual deprivation of a person's liberty, the accused will receive the benefit of 'the guiding hand of counsel' so necessary when one's liberty is in jeopardy."

This shall be considered a judgment on the merits (FRCiv.P 65(2)) and is binding upon the parties to this action, their officers, agents, servants, employees and attorneys.