**Robert M. DAIGLE, and Terry Lee Crosby, Individually and on behalf of all persons similarly situated, Petitioners,**

**and**

**Jack Nazimek et al., Petitioners-Intervenors,**

**v.**

**Honorable John E. WARNER, Individually and in his capacity as Secretary of the Navy, et al., Respondents.**

**Civ. No. 72-3603.**

United States District Court,
D. Hawaii.

Aug. 31, 1972.

---

2. Emphasis added.

Stanley E. Levin, Robert J. LeClair, Wesley Lau, Legal Aid Society, Waianae, Hawaii, for petitioners and petitioners-intervenors.

John S. Edmunds, Mattoch, Edmunds, Kemper & Brown, Honolulu, Hawaii, for American Civil Liberties Union.

Robert K. Fukuda, U. S. Atty., William J. Eggers, III, Asst. U. S. Atty., Honolulu, Hawaii, LCDR Robert T. Gustafson, Ad Referendum, Naval Law Center, Fourteenth Naval District, Pearl Harbor, Hawaii, for respondents.

## MEMORANDUM DECISION

PENCE, Chief Judge.

The central issue in this case is whether the recent Supreme Court decision of Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 applies to summary courts-martial proceedings conducted under 10 U.S.C. § 820.

It does.

*Statement of Facts*

Both first plaintiffs, Daigle and Crosby, were members of the U. S. Marine Corps stationed in Hawaii at the Kaneohe Marine Base. On June 28, 1972, Daigle appeared before a summary court-martial for alleged failure to obey a lawful order and possessing two I.D. cards. At that time, Daigle pled guilty to both charges and was sentenced to 20

days "at hard labor", i. e., imprisonment. On July 6, 1972, Crosby appeared at a summary court-martial to answer charges involving failure to obey a lawful order, failure to be at an appointed duty station and breaking a restriction. He pled guilty only to the first charge, but was acquitted of the remaining allegations. He was sentenced to 30 days Marine imprisonment.

On July 14, 1972, plaintiffs petitioned this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 et seq. They further requested that a class action be established (Rule 23, F.R.Civ.P.) and also sought a temporary restraining order and preliminary injunction (Rule 65(b) and (c), F.R.Civ.P.), prohibiting the defendants from conducting *any* summary courts-martial without affording Marine servicemen the *Argersinger* protections. Intermingled with the above prayers for relief was plaintiffs' request that this court declare 10 U.S.C. § 820 unconstitutional unless the *Argersinger* protections were applied to it (pursuant to 28 U.S.C. §§ 2201, 2202).[1] This court issued an Order to Show Cause, with hearing set for July 20, 1972.

At that hearing, after testimony by both plaintiffs,[2] various officers of the Marine Corps testified concerning both the particular summary courts-martial here in issue as well as the general policy of the Navy and Marine Corps, vis-à-vis this type of proceedings. This court then held: (1) The protections of *Argersinger* apply to summary courts-martial proceedings. (2) Plaintiff Daigle had been offered counsel at his court-martial and had knowingly and volun-

tarily waived it. (3) Plaintiff Crosby had not been offered counsel and had not validly waived his rights. Crosby's petition for a writ of habeas corpus was granted. (4) A class action determination was then inapproriate. A temporary restraining order, preliminary injunction and declaratory judgment were also denied. The court suggested that the military authorities "read the . . writing on the wall" and begin to provide attorneys or some legally reasonable substitute in implementing summary courts-martial.

On July 24, plaintiffs moved this court to reopen and reconsider their motion for a class action. This motion was based on an affidavit of Captain Willcox, Judge Advocate, U. S. M. C., which indicated that the military authorities at both Kaneohe and Pearl Harbor were not only refusing to provide counsel in post-July 20 summary courts-martial, but also denied the Captain access to those prisoners who had already been convicted post *Argersinger* but without its protections, who might be unaware of this court's July 20 ruling.

On July 27, a motion to intervene under Rule 24(a)(2), F.R.Civ.P., was filed by two sailors, Michael E. Chadwick and Warren T. Robinson.[3] Accompanying this motion was an affidavit of their attorney, Stanley Levin (who also represented Daigle and Crosby), stating that during the week of July 24–28, visiting Judge Peckham had suggested that he go to Pearl Harbor to interview various prisoners who he (Levin) believed were being incarcerated pursuant to summary courts-martial proceedings conducted in violation of *Argersinger*.[4] Upon inter-

1. Plaintiffs also moved for permission to proceed in forma pauperis, 28 U.S.C. § 2250. This was later granted.

2. Because the Assistant U. S. Attorney had only been given the case at 4:30 the prior afternoon, the government had filed no written memorandum. The record, however, indicates that the U. S. Attorney's office had notice of this case as early as July 6, but apparently did nothing about it. It's motion on July 20 for a continuance was denied rather rapidly.

3. Both also moved to proceed in forma pauperis.

4. Judge Pence was absent from Hawaii from July 23–August 1. During this period, Judge Peckham was understandably reluctant to rule on this matter and properly held it advisable that the August hearings await his return. However, on more than one occasion, Judge Peckham was forced to instruct the mili-

view, Chadwick informed Levin that he had been charged on July 7, 1972, for assault on a fellow Marine; although he had previously expressed a desire to have an attorney at his court-martial, he could not afford one himself and was never offered one; at his court-martial he pled guilty and, among other punishments, was sentenced to 30 days imprisonment. Although varying in factual detail, Robinson's story as told to Levin was essentially the same, i. e., he wanted counsel at his court-martial, but could not afford it himself and one was never provided nor offered to him.

On July 28, defendants moved (1) for a new hearing under Rule 59(a)(2), F.R. Civ.P., and (2) to set aside the judgment and order of July 20 for want of personal service upon certain named defendants under Rule 60(b)(4), F.R.Civ.P.

On July 31, another motion to intervene and proceed in forma pauperis was filed by two other Marines, Jack Nazimek and Robert Johnson. Again an affidavit by Attorney Levin was included, stating in substance that both Nazimek and Johnson (1) were charged with offenses after June 12; (2) they had voiced their desires for counsel prior to their courts-martial; (3) they could not afford counsel themselves; (4) at the time of their summary courts-martial they were neither offered nor provided with counsel; and (5) they pled guilty and each was sentenced to some term of imprisonment. The affidavit further stated that both had told Attorney Levin that this court's earlier decision of July 20 was not being recognized by the military authorities.[5]

On August 3, a hearing was held to decide all these post-July 20 matters. After this court denied the government's motions and granted the two motions to intervene and proceed in forma pauperis, the defendants raised a question as to

whether the proper military authorities had been served, such as would permit the court to consider the requested writs of habeas corpus. Although there was a profusion of military personnel of officer rank in the courtroom, none would admit he was authorized to represent the named parties defendant. Even the two judge advocates assisting the U. S. Attorney were unable to identify whom they represented. Because there was some genuine question concerning proper service, this court confined itself to the case of intervenor Robinson, the only one of the intervenors who was still incarcerated. The government stipulated that Robinson had not been provided with nor offered counsel at his summary court-martial and that his custodian was present in the courtroom. This court then granted the writ.

At an in-chambers session the court requested that the parties themselves try to work out the problems of service of process. The court also requested that the two judge advocates determine what policy position the Department of the Navy was going to take in these cases and whether the court's July 20 ruling would be followed voluntarily by the Navy and Marine Corps. A hearing was set for August 17 in order to assure that proper service might be accomplished and to allow the Navy further time to determine its position. In the meantime, plaintiffs' motion for reconsideration of the court's denial of a class action was denied without prejudice.

At the August 17 hearing, the government moved to dismiss for lack of jurisdiction and improper service of process. The government's motions were denied. After hearing evidence and evaluating all that had occurred since July 20, this court then granted plaintiffs' renewed motion for a class action pursuant to 23 (b)(3) and (c). The class was defined

---

tary authorities and U. S. Attorney's office to assure that interested attorneys could visit and interview their incarcerated clients.

5. Mr. Nazimek told Levin that when he (Nazimek) inquired about the Crosby ruling he was told by a Warrant Officer Hopkins that Nazimek and other "prisoners did not have any constitutional rights."

as all those persons who are members of the U. S. Navy and Marine Corps and who (1) were or are now or will be required after June 12, 1972 to stand trial by summary courts-martial held within this federal district; (2) were not or are not advised of their right to assistance of counsel during their summary courts-martial proceedings, and if indigent, advised that counsel must be provided without cost; and (3) had not made a knowing and intelligent waiver. Then pursuant to 28 U.S.C. § 1361, this court ordered defendants Warner, Zumwalt and Cushman (they having been served properly) and their agents to issue orders to insure that no summary courts-martial proceedings be commenced by the Navy or Marine Corps within this district unless the requirements of *Argersinger* are satisfied.[6]

By that order then, specifically, these three defendants must order that no commanding officer or officer-in-charge of a Navy or Marine Corps command or activity within this district shall refer any charge to a summary court-martial without an instruction that confinement at hard labor may not be ordered thereunder unless the accused is (1) advised of his right to counsel, (2) afforded an opportunity for assistance of counsel both prior to and during the summary court-martial proceeding, (3) advised that if indigent, counsel must be provided without cost, and (4) after the above three requirements are satisfied, the accused may make a knowing and intelligent waiver of his right to counsel. While retaining jurisdiction, this court, pursuant to Rule 23(d), F.R.Civ.P., ordered the three respondents to assure

that the members of plaintiffs' class be informed of their rights. Finally, the findings of guilt and sentences for Nazimek, Johnson, Chadwick and Robinson were vacated, subject, however, to retrial. Upon representations by the defendants that Navy regulations did not permit such retrial, the judgments were ordered expunged from all military records of plaintiffs.

*Legal Analysis*

It is beyond dispute that habeas corpus review in civil courts is available to military persons under certain circumstances.[7] Although there has been some disagreement on whether the scope of review with respect to constitutional issues is inherently more limited in the military context than in comparable civilian cases,[8] all courts agree that the military authorities must at a minimum deal "fully and fairly" with a military prisoner's constitutional contentions.[9] While this standard has itself been subject to different interpretations,[10] the underlying rationale is that review should be afforded when the petitioner has allegedly been denied a basic constitutional right, the absence of which materially affected his rights to a fair hearing.[11]

In deciding in *Argersinger* "that absent a knowing and intelligent waiver, no person may be imprisoned for any offense . . . unless he was represented by counsel at his trial", 92 S.Ct. at 2012, the Court quoted Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L. Ed.2d 799 (1963):

> "The right of one charged with crime to counsel may not be deemed funda-

6. For the appropriateness of the mandamus and class action devices under these type of circumstances, see Mead v. Parker, 464 F.2d 1108 (9 Cir. 1972).

7. See, *e. g.*, Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953); Mitchell v. Swope, 224 F.2d 365 (9 Cir. 1955).

8. Compare Allen v. VanCantfort, 436 F.2d 625 (1 Cir. 1971), with Kauffman v.

Secretary of Air Force, 135 U.S.App.D.C. 1, 415 F.2d 991 (1969).

9. See *Burns, supra*, n. 7, 346 U.S. at 143, 73 S.Ct. 1045.

10. See *Allen, supra*, n. 8, 436 F.2d at 629–630.

11. For the most recent Supreme Court statement on the meaning of *Burns*, see the dissent of Mr. Justice Rehnquist in Strait v. Laird, 406 U.S. 341, 92 S.Ct. 1693, at 1696, 32 L.Ed.2d 141.

mental and essential to fair trials in some countries, but it is in ours. From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantive safeguards designed to assure fair trial before impartial tribunals in which every defendant stands equal before the law." 372 U.S. at 344, 83 S.Ct. at 796.

The Court then continued:

"The requirement of counsel may well be necessary for a fair trial even in a petty offense prosecution. We are by no means convinced that legal and constitutional questions involved in a case that actually leads to imprisonment even for a brief period are any less complex than when a person can be sent off for six months or more." 92 S.Ct. at 2010.

In his concurring opinion Mr. Justice Powell echoed this idea:

"I am in accord with the Court that an indigent accused's need for the assistance of counsel does not mysteriously evaporate when he is charged with an offense punishable by six months or less. In Powell v. Alabama [287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158] and Gideon, both of which involved felony prosecutions, this Court noted that few laymen can present adequately their own cases, much less identify and argue relevant legal questions. Many petty offenses will also present complex legal and factual issues that may not be fairly tried if the defendant is not assisted by counsel. Even in relatively simple cases, some defendants, because of ignorance or some other handicap, will be incapable of defending themselves." 92 S.Ct. at 2017, 2018.

The need and importance of providing counsel in the military is reflected by 10 U.S.C. § 827. In essence, this section provides that for general courts-martial (proceedings having jurisdiction to impose sentences of confinement greater than six months),[12] the defense counsel

who must be provided must be (1) a judge advocate and (2) a graduate of an accredited law school or a member of the bar of a federal court or of the highest court of a state. It is also permissible that defense counsel, while not being a judge advocate, be a member of the bar of a federal court or the highest court of a state. For special courts-martial (proceedings having jurisdiction to impose sentences of confinement up to six months),[13] the required defense counsel must, if possible, have the same qualifications as counsel provided in general courts-martial. If physical conditions or military exigencies do not so permit, then these qualifications are not required. However, trial and defense counsel must always be similarly qualified.

This recognition of the importance of counsel must be contrasted with what occurs at summary courts-martial. In these proceedings, where it is possible to receive punishment for one month or less (10 U.S.C. § 820), no counsel is provided. The summary court officer essentially acts as judge, prosecutor and defense counsel. Yet, as the majority and Mr. Justice Powell pointed out in *Argersinger*, the *need* for counsel exists whenever a charge, no matter how petty, can lead to any period of imprisonment. This need, then, is the same regardless of *what* type of court-martial might be involved. This is made readily apparent by the fact that a person can never be tried by a summary court-martial if he objects thereto, 10 U.S.C. § 820. By objecting, he then invokes the jurisdiction of the special or general courts-martial, with the attendant right to counsel which 10 U.S.C. § 827 provides. If there is such objection to a summary court, since the offense is the same, the proof demanded before the special or general court-martial is also the same. It follows that the need for counsel is the same. However, prior to *Argersinger*, it is only in the special or general courts-martial that this need has been satisfied.

12. See 10 U.S.C. § 818.

13. See 10 U.S.C. § 819.

██ This court is not persuaded by the government's argument that because petitioner could have objected to the summary court-martial, and thereby received the protections provided by a general or summary court, his constitutional rights were not violated. Leaving aside the difficulty of equating waiver with the lack of objection, the stickler is that by objecting to the summary court procedure (and thereby invoking the constitutional protections specifically secured him under 10 U.S.C. § 827), the accused is forced to run the risk of receiving the greater punishments sanctioned by the general and special courts-martial. One cannot be "punished" for the exercise of his constitutional rights, United States v. Jackson, 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968).

 The government's primary argument is that the peculiar needs of the military demand that the *Argersinger* requirements not be applied to summary courts-martial. This court recognizes

> "That a system of specialized military courts, proceeding by practices different from those obtaining in the regular courts and in general less favorable to defendants is necessary to an effective national defense establishment, few would deny." O'Callahan v. Parker, 395 U.S. 258, 265, 89 S.Ct. 1683, 1687, 23 L.Ed.2d 291.

However, as noted above, these special attributes of military justice cannot justify denial of basic constitutional rights, when both these rights and the needs of the military can be successfully accom-modated. By applying *Argersinger* to summary courts-martial, this court is not burdening the military with an inflexible and impossible requirement.[14] Whether considered in terms of due process or the Sixth Amendment right to counsel, this court holds that the type and quality of representation which must be provided under *Argersinger* to summary courts-martial perforce may vary with the context of each particular case.[15]

On Oahu are two large military bases with no apparent lack of qualified lawyers to undertake the *Argersinger* requirements. With this type of representation available, it would be a violation of *Argersinger* to provide something less to servicemen tried at those bases. The "ship-at-sea" hypothetical which the government has so often cited presents a very different situation. Whenever, due to the exigencies of service operations, qualified lawyers are not present, the Navy and Marine Corps are mandated by *Argersinger* only to provide the best counseling then available.[16]

*Conclusion*

The requirements of 10 U.S.C. § 827 regarding special courts-martial indicate the basic guidelines for implementing this decision. In holding that *Argersinger* applies to summary courts-martial, this court, like The Court, focuses on the need and importance of counsel in even petty criminal proceedings where liberty may be imperiled.[17] While the services must make a good-faith effort to provide trained lawyers in all cases,

14. The Army and Air Force have voluntarily heretofore applied *Argersinger* to summary courts-martial.

15. See, *e. g.*, Kennedy v. Commandant, U. S. Disciplinary Barracks, 377 F.2d 339 (10 Cir. 1967) ; Angle v. Laird, 429 F.2d 892 (10 Cir. 1970) ; *Allen, supra,* n. 8. *Argersinger* itself, as it applies to purely nonmilitary proceedings, permits this type of flexibility. See Mr. Justice Brennan's concurrence, 92 S.Ct. at 2015.

16. *Ibid.*

17. This court rejects the government's argument that the nature and functions of a summary court officer, i. e., that since he serves as judge, prosecutor and defense attorney and is charged with assuring "that the interests of both the Government and the accused are safeguarded", ¶ 79 of the Manual for Courts Martial, 1969 (Rev.), the *Argersinger* requirement is satisfied. Like all other defendants, the accused in a summary court-martial is entitled to his *own* counsel and not a multi-purpose official who must assume three conflicting roles at the same time. *Cf.* In Re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

this court reemphasizes that due to the special operative requirements facing the armed services, the type and quality of representation must perforce vary with the circumstances of each case. It is only in this way that rational and constitutional accommodation of any conflicting interest can be made.