John BETONIE, USN, Petitioner,

v.

Capt. W. G. SIZEMORE, USN, Commanding Officer, Naval Air Station, Jacksonville, Florida, et al., Respondents.

Christopher P. TIMMONS, USN, Petitioner,

v.

Captain CARRIER, USN, Commanding Officer, NATTC, Jacksonville, Florida, Respondent.

Phillip J. de LA TOVA, USN, Petitioner,

v.

Captain CARRIER, USN, Commanding Officer, Naval Air Technical Training Center, Jacksonville, Florida, Respondent.

Dennis Michael LYNCH, TM3, USN, Petitioner,

v.

W. G. SIZEMORE, Captain, USN, Commanding Officer, Naval Air Station, Jacksonville, and J. S. Brunson, Captain, USN, Commanding Officer, USS Yosemite (AD19), Respondents.

Nos. 72–712–Civ–J–S, 72–828–Civ–J–S, 72–829–Civ–J–S and 72–870–Civ–J–S.

United States District Court, M. D. Florida, Jacksonville Division.

May 9, 1973.

Kathryn L. Powers, Mahoney, Hadlow, Chambers & Adams, Jacksonville, Fla., for plaintiff.

Harvey E. Schlesinger, Robert S. Yerkes, Asst. U. S. Attys., Lt. Ralph B. Levy, JAGC, USNR, Jacksonville, Fla., for defendant.

## ORDER AND OPINION

CHARLES R. SCOTT, District Judge.

The issue presented in this case is whether the Supreme Court decision of Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), applies to summary courts-martial proceedings under 10 U.S.C. § 820. The holding in that case is that ". . . absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." 407 U.S. at 37, 92 S.Ct. at 2012, 32 L.Ed.2d at 538. This Court knows of only one other case which has decided this particular issue since *Argersinger*: Daigle v. Warner, 348 F.Supp. 1074 (1972), decided by the District Court of Hawaii. That case held that *Argersinger* does apply to summary courts-martial proceedings and this Court is inclined to the same view.

## I. STATEMENT OF FACTS

Petitioners, John Betonie, Christopher P. Timmons, Phillip J. de La Tova and Dennis Michael Lynch, enlisted persons in the United States Navy, filed with this Court petitions for writ of habeas corpus pursuant to 28 U.S.C. §§ 2241(c)(1) and 2241(c)(3). The petitioners alleged that they were being confined unlawfully, in that they were tried and convicted to a period of confinement pursuant to summary court martial at which they were denied assistance of counsel. On January 24, 1973, an evidentiary hearing was held on these petitions for writ of habeas corpus at which hearing both the petitioners and the re-

spondents adduced evidence and presented legal arguments.[1]

On October 31, 1972, petitioner de La Tova was referred to trial by summary court-martial at the Naval Air Technical Training Center, Naval Air Station, Jacksonville, Florida. Petitioner was charged under the Uniform Code of Military Justice with possession of marijuana. Prior to the summary court-martial, the petitioner had requested that a military lawyer represent him. Petitioner was advised that a military lawyer would not be appointed to represent him but that he could retain, at his own expense, a private lawyer to represent him. Petitioner was also informed that he had the right to object to trial by summary court-martial and, if he did so object, the case could be referred to a special court-martial. The petitioner was further informed that a military lawyer would be appointed to represent him in a special court-martial but that a special court-martial carries more severe maximum penalties than a summary court-martial. The petitioner consented, in writing, to trial by summary court-martial but submitted to the summary court-martial officer a signed document stating that by so consenting he in no way waived his right to counsel, which document was received into evidence. On several occasions prior to the summary court-martial, petitioner had conferred with a member of the Judge Advocate General's Corps, United States Naval Reserve. Petitioner was found guilty by a summary court-martial on October 31, 1972, of possession of marijuana and sentenced to confinement for a period of ten days. The findings and sentence were approved by the convening and supervisory authorities.

Petitioner Dennis M. Lynch was referred to trial by summary court-martial at the Naval Station, Mayport, Florida, on a single charge of unauthorized absence for a period of about 24 days. The summary court-martial was held on November 6, 1972. Prior to the court-martial petitioner was advised that he had no right to appointed military counsel at a summary court-martial and that if he wanted a lawyer appointed to represent him he would have to refuse summary court-martial and then, if his case were referred to a special court-martial, counsel would be appointed to represent him. Petitioner was further advised of the differing maximum punishments at summary and special courts-martial. Petitioner requested appointed counsel and his request was denied by the summary court officer. He then consented in writing to trial by summary court-martial. Without a lawyer representing him, petitioner was arraigned and pled guilty to the charge of unauthorized absence. The summary court-martial officer accepted the plea after questioning the petitioner to insure the existence of a factual foundation to justify a conclusion that the plea was provident. A finding of guilty was then announced and petitioner was sentenced to confinement for a period of 25 days. The findings and sentence were approved by the convening and supervisory authorities. At the time of his trial petitioner who lived in government quarters was 19 years of age. He was of the pay grade E–4 earning on a gross basis basic pay and sea pay totaling $359.80 per month.

Petitioner Christopher P. Timmons was referred to trial by summary court-martial at the Naval Air Technical Training Center, Naval Air Station,

---

1. The hearing was a consolidated hearing on four petitions for writ of habeas corpus. Betonie v. Sizemore, No. 72–712–Civ–J–S; Timmons v. Carrier, No. 72–828–Civ–J–S; La Tova v. Carrier, No. 72–829–Civ–J–S; Lynch v. Sizemore, No. 72–870–Civ–J–S. Petitioner de La Tova had been transferred on December 10, 1972, by the United States Navy to New Orleans, Louisiana, and was not present at the hearing. Thereafter, the parties entered into and filed with the Court a stipulation of facts concerning the petition filed by Phillip de La Tova. Petitioner Lynch was discharged from the United States Navy on December 21, 1972, leaving a forwarding address in the State of Vermont. The parties entered into and filed with the Court a stipulation of facts concerning the petition filed by Dennis M. Lynch.

Jacksonville, Florida, under one charge and two specifications under the Uniform Code of Military Justice for possession of marijuana. Prior to the summary court-martial, the petitioner was advised that a military lawyer would not be appointed to represent him in a summary court-martial but that he could refuse the summary court-martial and his case could be referred to a special court-martial wherein a military lawyer would be appointed to represent him. The petitioner was also informed that more severe penalties could be imposed pursuant to a special court-martial as opposed to a summary court-martial. The petitioner consented to the summary court-martial, pled not guilty, but was found guilty by the summary court-martial officer and sentenced to ten days confinement and $100.00 fine.

Petitioner Timmons testified that on the night he was apprehended he and a friend were drinking orange juice and eating potato chips by his car at a trailer park across the street from the Naval Air Station. The security police approached and searched the car, finding a marijuana cigarette on the hood of the petitioner's car, a pipe in the glove compartment of the car and a lid containing some marijuana in the grass; a total of 10.5 grams was discovered. At the evidentiary hearing, petitioner Timmons testified that he did not consent to the search of the car although this issue had not been raised at the summary court-martial. The respondents introduced the record of the summary court-martial proceedings wherein the security officer conducting the search testified that prior to the search he had obtained the verbal permission from the petitioner to search the car. Petitioner did raise at his summary court-martial the issue as to the federal government's jurisdiction over the situs of the alleged crime, which issue was decided in favor of the government by the summary court-martial officer. The petitioner had consulted with a military lawyer prior to his summary court-martial. The findings and sentence were approved by the convening and supervisory authorities.

Petitioner John Betonie was referred on September 7, 1972, to trial by a summary court-martial on a charge under the Uniform Code of Military Justice of unauthorized absence. The court-martial officer, Lieutenant David Gay (a member of the Judge Advocate's Corps and admitted to practice law in the Commonwealth of Massachusetts), testified at the evidentiary hearing that the petitioner was informed that he was not entitled to have a military lawyer appointed to represent him in a summary court-martial, that he could object to the summary court-martial and that, if he did so object, his case could be referred to a special court-martial wherein a military lawyer would be appointed to represent him. The petitioner was further advised of the differing maximum punishments in a special and summary court-martial. The petitioner consented to the summary court-martial, pled guilty and was sentenced to 25 days in confinement.

At the evidentiary hearing, petitioner Betonie testified that he had obtained leave in May 1972 to visit his home because of some family problems, that he departed Jacksonville on a Friday and was scheduled to return to the Naval Air Station on the following Tuesday. However, on his way home, he lost his return airplane ticket in Albuquerque, New Mexico. Not having the money to purchase another ticket, petitioner worked for a while on the Indian Reservation where his family lives and finally obtained assistance from the Red Cross to return to the base. Petitioner never thought to call his superiors and inform them of what had happened. As this Court noted at the evidentiary hearing, petitioner Betonie did not appear to have the intelligence of persons his age.

At the evidentiary hearing, Captain Thadeus T. Coleman, United States Navy, and Captain Charles E. Waite testified as to the important role of the summary court-martial in providing efficient and swift discipline in the Navy,

as well as positive rehabilitation for the sailor involved.

## II. STATUTORY FRAMEWORK

Article 27 of the Uniform Code of Military Justice (hereinafter referred to as "UCMJ"), 10 U.S.C. § 827, provides that the authority convening a general or special court-martial shall appoint trial counsel (*i. e.*, the prosecutor) and defense counsel. Generally, any court-martial, general, special or summary, is convened by the commanding officer of the base or fort where the accused is stationed.[2] 10 U.S.C. §§ 822, 823, 824. In a general court-martial, both trial and defense counsel must be judge advocates of the Army, Navy, Air Force or Marine Corps, or be law specialists in the Coast Guard, and they must be graduates of an accredited law school or members of the bar of a federal court or of the highest court of any state. Civilian counsel need not fulfill these requirements; they are required only to be members of a state or federal bar. Thus, only lawyers may prosecute or defend in general courts-martial. 10 U.S.C. § 827.

In a special court-martial, the accused is not afforded a lawyer under all circumstances. The UCMJ provides that the accused in a special court-martial must be provided with counsel having the same qualifications as those for a general court-martial "unless counsel having such qualifications cannot be obtained on account of physical conditions or military exigencies". 10 U.S.C. § 827(c)(1). If "military exigencies" arise, commissioned officers are the appointed substitutes.[3] However, if the trial counsel in a special court-martial is qualified to serve before a general court-martial, the appointed defense counsel must be equally qualified. 10 U.S.C. § 827(c)(2). A general court-martial has jurisdiction to adjudge any sentence prescribed by the UCMJ, in-cluding the death penalty, whereas a special court-martial may impose any punishment except death, dishonorable discharge, dismissal, confinement for more than six months, hard labor without confinement for more than three months, forfeiture of pay exceeding two-thirds pay per month or forfeiture of pay for more than six months. 10 U.S.C. §§ 818, 819.

As the lowest level military court, the summary court consists of one commissioned officer who serves multiple roles as judge, jury, prosecutor, defense counsel and usually court reporter. 10 U.S.C. §§ 816(3), 820, 824. The summary court-martial has jurisdiction over all persons subject to the UCMJ *except* officers, cadets, aviation cadets and midshipmen and can adjudge any sentence except death, dismissal, dishonorable or bad-conduct discharge, confinement for more than 30 days, hard labor without confinement for more than 45 days, restrictions to specified limits for more than two months, or forfeiture of more than two-thirds of one month's pay. 10 U.S.C. § 820. The summary courts-martial do not have the jurisdiction, in cases involving enlisted men above the fourth enlisted pay grade, to adjudge confinement, hard labor without confinement or reduction except to the next inferior grade. JAGC, Manual for Courts-Martial ¶16(b) (1969 rev. ed.). It is thus significant that because of their inferior rank, enlisted persons above the fourth enlisted pay grade never face the possibility of confinement without being provided the assistance of legal counsel or an effective substitute.

The accused has the statutory right to object to trial by summary court-martial and, if such objection is raised, "trial may be ordered by special or general court-martial as may be appropriate". 10 U.S.C. § 820. Thus, under present procedure, an accused in a summary court-martial who desires legal represen-

---

2. *See* R. Washburn, The Right to Competent and Effective Counsel Under the Uniform Code of Military Justice, 46 Tul.L.Rev. 293, 294 n. 7 (1971).

3. *Id.* at 295.

tation or a reasonably qualified substitute, must object to the summary court-martial and risk the potentiality of greater penalties dispensed by a general or special court-martial.

Basically, the official record of the summary court-martial consists of the pleas, findings, lists of witnesses, sentence, the number of previous convictions considered and the appropriate charges to and inquiries of the accused made by the summary court. However, "unless otherwise prescribed by the convening or higher authority, the evidence considered need not be summarized or attached to the record of the trial". JAGC, Manual for Courts-Martial ¶79(e) (rev. ed. 1969). On this record, the accused can obtain review in the office of the Judge Advocate General on the ground of newly discovered evidence, fraud on the court, lack of jurisdiction over the accused or the offense or error prejudicial to the substantial rights of the accused, 10 U.S.C. § 869; and under Article 138 of the UCMJ, 10 U.S.C. § 938, any member of the armed forces may petition for redress of any wrong to a superior commissioned officer and ultimately to the Secretary of the Navy. Prior to these reviews, an automatic review of the conviction and sentence is made by the convening authority who has the power to "approve only such findings of guilty, and the sentence or such part or amount of the sentence, as he finds correct in law and fact as he in his discretion determines should be approved". 10 U.S.C. § 864. One convicted under a summary court-martial does not have available the right of review by a court of military review or by the Court of Military Appeals. 10 U.S.C. §§ 866, 867.

A summary court-martial can affect the convicted's future promotions [4] and can also affect any future sentencing within certain maximum limits in the event the one convicted is a recidivist. 10 U.S.C. § 856; JAGC, Manual for

Courts-Martial ¶¶ 75(b), 76(a), 127(c) (rev. ed. 1969).

### III. JURISDICTION OF PETITIONERS' HABEAS CORPUS PETITIONS

This Court must initially decide the threshold question of whether jurisdiction over these habeas corpus petitions exists. This involves a two-pronged determination: (a) whether the petitioners satisfied the "custody" requirement of 28 U.S.C. § 2241; and (b) whether the petitioners were required to exhaust their military judicial remedies.

*(A) Custody Requirement*

■ At the time the petitioners filed their petitions for habeas corpus, they were in the custody of the respondents. The fact that the petitioners have subsequently served their sentences and been released from confinement does not, under settled law, affect their right to challenge the allegedly illegal confinements under 28 U.S.C. § 2241. *See* Carafas v. LaValle, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1948); Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968); Sciberras v. United States, 404 F.2d 247 (10th Cir. 1968); Bramlett v. Peterson, 307 F.Supp. 1311 (M.D.Fla.1969); Eldridge v. Peyton, 295 F.Supp. 621 (W.D.Va.1968); McAliley v. Birdsong, 451 F.2d 1244 (6th Cir. 1971). Therefore, the custody requirement of 28 U.S.C. § 2241(c) is satisfied.

*(B) Exhaustion of Remedies Requirement*

The respondents contend that since the petitioners have failed to exhaust their military remedies, relief in a federal civilian forum is inappropriate and therefore should be denied. The remedies to which the respondents refer, as pointed out in Section II of this opinion, is the right to appeal to the Judge Advocate General and the Secretary of the Navy. Respondents cite as authority

4. Captain Thadeus J. Coleman, USN, admitted this to be true at the evidentiary hearing held on January 24, 1973.

for their contention, the following cases: Gusik v. Schilder, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146 (1950); Noyd v. Bond, 395 U.S. 683, 89 S.Ct. 1876, 23 L. Ed.2d 631 (1969); and Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953).

It should be initially pointed out that *Noyd* and *Burns* are inapposite here since the petitioners in those cases had the right to appeal to the United States Court of Military Appeals, a judicial remedy which the petitioners here do not possess. 10 U.S.C. §§ 866, 867. In addition, no other *judicial appellate tribunals* established to hear appeals in court-martial cases are available to these petitioners to which they could present their serious constitutional claim as a matter of right under the Uniform Code of Military Justice. 10 U.S.C. §§ 866, 867.

█ The respondents assert, nevertheless, that the petitioners could seek extraordinary relief before the United States Court of Military Appeals even if they are not entitled to appeal thereto as a matter of right. As authority for this proposition, the respondents refer to several opinions rendered by the Court of Military Appeals. In United States v. Frischolz, 16 U.S.C.M.A. 150, 36 C.M. R. 306 (1966), the Court of Military Appeals indicated that part of its judicial responsibility would include the protection and preservation of the constitutional rights of armed forces personnel. In Levy v. Resor, 17 U.S.C.M.A. 135, 37 C.M.R. 399, that Court also stated that: "In a proper case, this Court has the authority to issue such [habeas corpus] writs" to test the legality of a petitioner's restraint. *Id.* at 401. To the same effect is United States v. Bevilacqua, 18 U.S.C.M.A. 10, 39 C.M.R. 10 (1968), which was cited with approval in Noyd v. Bond, *supra.*

The answer to such an argument is that such relief is too remote and speculative when considered in the face of the substantial constitutional claim herein presented. As an example, the recent Fifth Circuit case of Cole v. Laird, 468 F.2d 829 (5th Cir. 1972), permitted the petitioner there to pursue his claim for relief in a civilian forum without requiring him to seek the extraordinary relief which the respondents assert could theoretically be made available before the Court of Military Appeals. That case involved a court-martial conviction for the off-duty, off-post use of marijuana, which offense the petitioners claimed was not sufficiently "service-connected" to bring itself within the constitutional limits of military jurisdiction. Certainly the issue involved in this case, the right to counsel in a summary court-martial, constitutes an even more fundamental constitutional claim than was involved in *Cole.* Powell v. Alabama, 287 U.S. 45, 68, 53 S.Ct. 55, 77 L.Ed. 158 (1936); Johnson v. Zerbst, 304 U.S. 458, 462, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); Gideon v. Wainwright, 372 U.S. 335, 344, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

█ The respondents further assert that the petitioners have viable forums in which to present their constitutional claim, those forums being the Judge Advocate General and the petitioners' military supervisory authority with ultimate recourse thereafter to the Secretary of the Navy. 10 U.S.C. §§ 869, 871. The obvious answer to this argument, however, is that these forums are strictly administrative in nature and do not constitute judicial appellate tribunals to which constitutional questions could be effectively presented through the adversary process peculiar to a judicial forum. This same argument was presented to the Court of Appeals for the Fifth Circuit in Cole v. Laird, *supra,* and rejected:

> The Government contends, however, that Cole has viable forums to present his claim of constitutional law in the person of the Judge Advocate General of the Air Force, Uniform Code of Military Justice, Art. 69, 10 U.S.C. § 869, or before the Board for Correction of Military Records, 10 U.S.C.A. §§ 1551–1554. Whatever may have been the efficacy of the Government's

exhaustion argument regarding Article 69 is rendered academic by the action taken by Major General James S. Cheney on December 27, 1971, denying Cole's request for relief.

A careful reading of the statute creating the Board for Correction of Military Records and the cases which have been resolved through that Board convinces us that its function is one of administrative review, its expertise is inapposite for the task at hand, and its powers too limited to grant appropriate relief. Cf. Pitcher v. Laird, 5 Cir., 1970, 421 F.2d 1272, 1276.

Although it is clear that some degree of exhaustion is required before federal courts will review courts-martial convictions, it is clear that Cole's only opportunity for judicial scrutinization of his conviction lies with the federal courts. Cf. Parisi v. Davidson, 1972, 405 U.S. 34, 92 S.Ct. 815, 31 L.Ed.2d 17.

Furthermore, testimony at the evidentiary hearing by Captain Waite, a JAG officer, indicated that the Judge Advocate General, with the full approval of the Secretary of the Navy, had already determined that, in his opinion, the *Argersinger* case did not apply to summary courts-martial. Therefore, an appeal to either of these forums would have been an obviously futile effort.[5]

The Supreme Court has recognized, by way of dictum, that exhaustion of available remedies as a prerequisite for full consideration of habeas corpus petitions should not be required when "prompt and effective relief" is not available. Noyd v. Bond, supra, 395 U.S. at 698, 89 S.Ct. 1876. In addition, it has been held that the doctrine of exhaustion of administrative remedies will not be applied to require a member of the armed forces, who has applied for and been denied discharge as a conscientious objector, to first raise his constitutional claims of wrongful detention as a defense in a court-martial proceeding before seeking habeas corpus relief. Crane v. Hedrick, 284 F.Supp. 250 (N.D.Cal.1968); Hammond v. Lenfest, 398 F.2d 705 (2nd Cir. 1968); Gann v. Wilson, 289 F.Supp. 191 (D.C.Cal.1968); United States ex rel. Brooks v. Clifford, 409 F.2d 700 (4th Cir. 1969). Neither is it necessary for him to petition the Army Board for Correction of Military Records before seeking judicial relief from action taken by the Department of the Army which he claims to be arbitrary, and which by Department of Defense directive is made final. Ogden v. Zuckert, 111 U.S.App.D.C. 398, 298 F.2d 312 (1961); Girault v. United States, 135 F.Supp. 521, 133 Ct.Cl. 135 (1955); cf. Pitcher v. Laird, 421 F.2d 1272 (5th Cir. 1970). In Robinson v. Rand, 340 F.Supp. 37 (D.Colo.1971), the failure of a female member of the Air Force to exhaust the administrative remedies of appeal to the Air Force Board for Correction of Military Records and to the Secretary of the Air Force was held not to prevent a suit to bar her military discharge on the basis of pregnancy.

In conclusion, since the petitioners lacked viable judicial appellate forums

---

5. The United States Supreme Court stated in Parisi v. Davidson, 405 U.S. 34, 41, 92 S.Ct. 815, 820, 31 L.Ed.2d 17 (1972) (a habeas corpus petition by an Army draftee whose application for a discharge as a conscientious objector was denied by the Department of the Army) :

Under accepted principles of comity, the court should stay its hand only if the relief the petitioner seeks—discharge as a conscientious objector—would also be available to him with reasonable promptness and certainty through the machinery of the military judicial system. . . .

The Court then held that since the military judicial system in its processing of the court-martial charge brought against petitioner would not provide the discharge sought by him with promptness and certainty, the district court should proceed to determine the habeas corpus claim despite the pendency of the court-martial proceedings. Although *Parisi* is factually distinguishable from the case at bar, the situation is somewhat analogous, in that further pursuit of military remedies by the petitioners here is patently futile in the light of the decision by the Judge Advocate General not to apply *Argersinger* to summary courts-martial.

within the military to which they could present their substantial constitutional claim and since the forums that were available had already indicated a predisposition on such claim which would make appeals thereto patently futile, this Court holds that civilian federal jurisdiction over these habeas petitions does exist pursuant to 28 U.S.C. § 2241(c)(3).

## IV. SCOPE OF REVIEW

It is settled law that the federal civil courts have jurisdiction of applications for habeas corpus brought by persons in confinement by military authorities. United States ex rel. Berry v. Commanding General, 411 F.2d 822 (5th Cir. 1969). However, it is equally settled that the scope of matters open for review is narrower than in civil cases. Suttles v. Davis, 10 Cir., 215 F.2d 760, cert. denied 348 U.S. 903, 75 S.Ct. 228, 99 L.Ed. 709 (1954). The standard as to scope of review has been set forth in Gorko v. Commanding Officer, 314 F.2d 858, 859 (10 Cir. 1963), and cited with approval by Kennedy v. Commandant, 377 F.2d 339 (10 Cir. 1967):

> The scope of judicial review of military habeas corpus cases is well established. Court inquiry is limited to whether the court-martial had jurisdiction of the person and the offense charged, whether the accused was accorded due process of law as contemplated and insured by the Uniform Code of Military Justice, and whether competent military tribunals gave fair and full consideration to all the procedural safeguards deemed essential to a fair trial under military law.

In Military habeas corpus cases the civil courts would certainly have jurisdiction to determine whether the accused was denied a basic constitutional right such as the right to counsel. *Cf.* Dixon v. United States, 237 F.2d 509 (10 Cir. 1956). We, therefore, turn to the merits of this case.

## V. APPLICABILITY OF THE BILL OF RIGHTS TO MILITARY COURTS-MARTIAL

The Supreme Court has consistently recognized that due process of law and the basic constitutional rights are applicable to military courts as well as civilian courts. O'Callahan v. Parker, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969); Toth v. Quarles, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8 (1955); Burns v. Wilson, 346 U.S. 137, 73 S.Ct. 1045, 97 L.Ed. 1508 (1953). In *Burns, supra,* at 142, 73 S.Ct. at 1048, the Supreme Court stated:

> The military courts, like the state courts, have the same responsibilities as do the federal courts to protect a person from a violation of his constitutional rights.

In *Toth, supra,* 350 U.S. at 21–22, 76 S.Ct. at 8, the Court elaborated on this principle:

> That provision [the constitutional grant of power to Congress to regulate the armed forces] does not empower Congress to deprive people of trials under the Bill of Rights safeguards, and we are not willing to hold that power to circumvent those safeguards should be inferred through the Necessary and Proper Clause
>
> . . . .
>
> There are dangers lurking in military trials which were sought to be avoided by the Bill of Rights and Article III of our Constitution. Free countries of the world have tried to restrict military tribunals to the narrowest jurisdiction deemed absolutely essential to maintaining discipline among troops in active service . . . .
>
> Determining the scope of the constitutional power of Congress to authorize trial by court-martial presents another instance calling for limitation to 'the least possible power adequate to the end proposed.'

With this clear mandate in mind this Court now turns to the question of whether the right to counsel as compre-

hended by the Sixth Amendment and by the concept of due process is applicable to military trials in general.

## VI. THE RIGHT TO COUNSEL IN COURTS-MARTIAL IN GENERAL

In Section II of this opinion, this Court has detailed the basic statutory framework for military trials. It should be reemphasized here that the right to counsel or qualified substitute is expressly provided for in general and special courts-martial. That the importance of this provision for counsel has been recognized by Congress is graphically illustrated by the following additional statutory provisions in the UCMJ: (1) in a general court-martial both the prosecutor and the defense counsel must be lawyers; (2) in a special court-martial, if the prosecutor is a lawyer, the defense counsel must be similarly qualified; thus, assuring that the defendant is not subjected to an unconscionable advantage. 10 U.S.C. § 827.

■ The respondents, however, cite United States v. Culp, 14 U.S.C.M.A. 199, 33 C.M.R. 411 (1963), as authority for the proposition that the Sixth Amendment does not apply in the military context. We must reject that case's authoritative value for two reasons. First of all, that case must be limited to its facts. That decision merely upheld the unique provision in the UCMJ of counsel for special courts-martial—that if lawyer-trained defense counsel is unavailable, a comparable substitute is permissible as long as he and the prosecutor are equally qualified. Secondly, this Court is certainly not bound by the decisions of the Court of Military Appeals as to questions of constitutional law. Jackson v. McElroy, 163 F.Supp. 257 (D.D.C.1958). In addition, as was pointed out in Kennedy v. Commandant, U. S. Disciplinary Barracks, 377 F.2d 339, 343 (10 Cir. 1967): "Certainly no one can deny that at least the spirit of the Sixth Amendment right to counsel pervades the due process requirement of military justice." In Smith v. Mc-

Namara, 395 F.2d 896 (10 Cir. 1968), the Tenth Circuit also held that the same provision of the UCMJ dealt with in *Culp, supra,* complies with the "spirit" of the Sixth Amendment right to counsel, in that the accused is entitled to the guiding hand of one whose competency is comparable to that of his adversary.

■ More importantly, as far as precedential value is concerned, the clear mandate of *O'Callahan, Toth* and *Burns,* supra, is that the basic constitutional rights embodied in the Bill of Rights are applicable to military tribunals. Certainly no rights are more basic than the right to counsel. In Johnson v. Zerbst, 304 U.S. 458, 462, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461 (1938), the Supreme Court stated:

> [The assistance of counsel] is one of the safeguards of the Sixth Amendment deemed necessary to insure fundamental human rights of life and liberty . . . . The Sixth Amendment stands as a constant admonition that if the constitutional safeguards it provides be lost, justice will not 'still be done.'

And in Powell v. Alabama, 287 U.S. 45, 68, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1936), the Court said:

> The right to be heard would be, in many cases, of little avail if it did not comprehend the right to be heard by counsel.

This Court holds, therefore, that the Sixth Amendment right to counsel is applicable to the military sphere to the extent outlined below.

## VII ARGERSINGER APPLIES TO SUMMARY COURTS-MARTIAL

Having decided that the Sixth Amendment is applicable to military trials, it is but a short step to decide that *Argersinger* is applicable to summary courts-martial. The language of *Argersinger* is clear and absolute:

> We hold, therefore, that absent a knowing and intelligent waiver, no

person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial.

The respondents contend, however, that the application of *Argersinger* to summary courts-martial would not be in keeping with the peculiar needs of the military establishment where the emphasis is on efficient and swift discipline and speedy rehabilitation of the sailor involved. As petitioners point out, however, the need for counsel is even more acute in the military context because of the unique form of justice provided by military courts. In Reid v. Covert, 354 U.S. 1, 35, 77 S.Ct. 1222, 1240, 1 L.Ed.2d 1148 (1957), the Supreme Court stated:

> Traditionally, military justice has been a rough form of justice emphasizing summary procedures, speedy convictions and stern penalties with a view to maintaining obedience and fighting fitness in the ranks.

In O'Callahan v. Parker, supra, 395 U.S. at 266, 89 S.Ct. at 1687, the Court reiterated the point:

> A civilian trial, in other words, is held in an atmosphere conducive to the protection of individual rights, while a military trial is marked by the age-old manifest destiny of retributive justice.

The respondents contend, however, that the interests of the accused are safeguarded by the summary court, who "will thoroughly and impartially inquire into both sides of the matter." JAGC, Manual For Courts-Martial, ¶ 79a (rev. ed. 1969). This contention is vitiated by the dominating factor of "command influence" which the United States Supreme Court recognized in *O'Callahan*, *supra*, at 264, 89 S.Ct. at 1686:

> . . . the suggestion of the possibility of influence on the actions of the court-martial by the officer who convenes it, selects its members and the counsel on both sides, and who

usually has direct command authority over its members is a pervasive one in military law, despite strenuous efforts to eliminate the danger.

An important reason for applying the right to counsel to summary courts-martial is that, as pointed out previously, it is only the lower ranking enlisted men, below the rank of fourth enlisted pay grade, who are forced to face the possibility of a confinement sentence without the assistance of counsel; and officers are not even subject to summary courts-martial. As the petitioners correctly point out, these lower ranking military personnel are perhaps the least able to defend themselves.[6] The following language in Powell v. Alabama, *supra*, 287 U.S. at 69, 53 S.Ct. at 64, is particularly appropriate:

> Even the intelligent and educated layman has small and sometimes no skill in the science of the law. If charged with a crime, he is incapable, generally, of determining for himself whether the indictment is good or bad. He is unfamiliar with the rules of evidence. Left without the aid of counsel he may be put on trial without a proper charge, and convicted upon incompetent evidence, or evidence irrelevant to the issue or otherwise inadmissible. He lacks both the skill and knowledge adequately to prepare his defense, even though he may have a perfect one. He requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence. *If that be true of men of intelligence, how much more true is it of the ignorant and illiterate, or those of feeble intellect.* (emphasis added)

The distinction between summary courts-martial and superior tribunals as to the right to counsel is not justified, for, as pointed out in *Argersinger*, 407

6. It should be reiterated that this Court noted at the evidentiary hearing that petitioner *Betonie* did not appear to be of normal intelligence.

U.S. at 33, 92 S.Ct. at 2010, 32 L.Ed.2d at 536:

> The requirement of counsel may well be necessary for a fair trial even in a petty offense prosecution. We are by no means convinced that legal and constitutional questions involved in a case that actually leads to imprisonment even for a brief period are any less complex than when a person can be sent off for six months or more.

The mere fact that the petitioners could have objected to the summary courts-martial and received instead a special or general court-martial does not constitute a viable substitute since special and general courts-martial carry the risk of the imposition of stiffer penalties. This would, in effect, penalize the petitioners for the exercise of a constitutional right which is violative of United States v. Jackson, 390 U.S. 570, 88 S. Ct. 1209, 20 L.Ed.2d 138 (1968), which struck down a provision of the federal kidnapping statute which permitted the death penalty only if the accused demanded a jury trial and was found guilty. See also Shapiro v. Thompson, 394 U.S. 618, 631, 89 S.Ct. 1322, 22 L. Ed.2d 600 (1969).

The respondents argue that the requirement which this Court imposes in this case will adversely affect the Navy's efficiency and discipline. This Court's answer is that the mere concern for military efficiency will never be permitted to result in the deprivation of a constitutional right except possibly within the context of a wartime situation. In addition, this Court's holding will not cause discipline to suffer since discipline is engendered by respect. Where a serviceman knows he is being fairly treated, he will be more inclined to be loyal and obedient.

The imposition of the requirement of the right to counsel in the military context is somewhat akin to a similar requirement in the context of the juvenile court system. In In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), the court rejected the argument that the peculiar needs of the juvenile court system justified the denial of certain basic constitutional rights, including the right to counsel, and went on to state that:

> . . . A proceeding where the issue is whether the child will be found to be 'delinquent' and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution. The juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it. The child "requires the guiding hand of counsel at every step in the proceedings against him." 387 U.S. at 36, 87 S.Ct. at 1448.

As pointed out in Daigle v. Warner, *supra,* by the District Court of Hawaii, the military is not burdened by an "inflexible and impossible requirement." If this were not so, the Air Force and Army would not have already applied Argersinger to summary courts-martial on a voluntary basis. Daigle v. Warner, *supra,* footnote 14.

## VIII. IMPLEMENTATION

This Court realizes that "military exigencies" are such as to allow for a certain amount of flexibility in the qualifications required of assigned defense counsel. Therefore, the following guidelines which are set forth below for the implementation of *Argersinger* in the military context are designed to provide for such flexibility.

## IX. MANDATORY GUIDELINES

(1) No commanding officer or officer-in-charge of a Navy or Marine Corps command or activity within this district shall refer any charge to a summary court-martial without an instruction that confinement may not be ordered thereunder unless the accused is:

(a) advised of his right to counsel,

(b) afforded an opportunity for counsel both prior to and during the

summary court-martial proceeding,

(c) advised that if indigent, counsel must be provided without cost, and

(d) after he has been so advised, the accused may execute a knowing and intelligent waiver of his right to counsel.

 (2) The accused shall be afforded counsel having the qualifications set forth in 10 U.S.C. § 827(b) unless counsel having such qualifications cannot be obtained on account of physical conditions or military exigencies. If counsel having such qualifications cannot be obtained, the court shall state in writing the reasons therefor.

(3) If the summary court or trial counsel is qualified to act as counsel in a general court-martial, the defense counsel detailed by the convening authority · must be similarly qualified.

(4) If the summary court or trial counsel is a commissioned officer, the defense counsel detailed by the convening authority must also be a commissioned officer of at least equal rank.

(5) No accused shall be denied the right to retain civilian legal counsel if he so requests unless military exigencies or physical conditions require such a denial. An accused is "indigent" when, given his total financial situation by comparing assets and liabilities, he is unable to retain an attorney.

Therefore, it is

Ordered:

1. The respondents in this case must either retry the petitioners under the guidelines set forth above or, in the alternative, expunge or cause to be expunged the petitioners' military records of the courts-martial at issue in this case.

2. This Court retains jurisdiction of this case in order that the respondents can assure this Court that the guidelines set forth above have in fact been implemented.

3. The respondents shall provide this Court with written assurances under oath that the guidelines set forth above have in fact been implemented within thirty (30) days of the date of this order.